Thomas Lonergan et al. v. San Antonio Trust Company.

No. 1721.  Decided October 30, 1907.

**1.—Building Contract—Performance—Defective Specifications.**

A contractor undertaking to erect a building in accordance with certain plans and specifications and to the satisfaction of the architect, the building having fallen down when nearly finished, was not relieved from his obligation to restore and complete it under his contract by showing that its collapse was due to defects in the specifications prepared for the owner by the architect and made part of the contract. (Pp. 71–74.)

**2.—Same—Implied Guaranty.**

The fact that the architect was selected by the owner of the property and the plans and specifications made a part of the building contract were prepared for and adopted by him, did not imply any guaranty on his part to the contractor who afterwards undertook to construct the building in accordance therewith that the architect was competent and the specifications suitable and sufficient. (Pp. 74–76.)

**3.—Same—Cases Discussed.**

Thompson v. Chaffea, 29 Texas Civ. App., 567, criticised and limited; Bentley v. State, 73 Wis., 416, disapproved; and Thorn v. Mayor etc., L. R. 1 App. Cas., 120, followed. (Pp. 72, 73.)

**4.—Express Guaranty—Contract Construed.**

A clause in a building contract binding the owner to "recognize the acts of the architect, not only as regards extra work but also as to the sufficiency of the design, material, and workmanship," standing between two clauses of the contract relating only to alterations in the plans and specifications and requirement of extra work which the architect was authorized to make, is taken as referring only to the connection in which it stands, and not as a general guaranty of the sufficiency of the plans and specifications embraced in the contract. (P. 75.)

**5.—Building Contract—Guaranty of Performance—Alteration of Plans.**

Sureties who guaranteed the performance of their principal's contract to erect a ouilding according to certain plans and specifications and the satisfaction of the architect, are discharged from liability by a material alteration of the plans and specifications made without their consent; and there is no distinction in this respect between sureties who executed the bond with and those executing it without compensation. (Pp. 76, 77.)

**6.—Same—Architect's Authority to Change Plans.**

Where by the building contract the owner reserved the right to his architect to alter or modify the plans and specifications without invalidating the

contract, with proportional addition to or abatement of the price, no alterations or extra work to be done except upon the price being agreed to or fixed by the architect beforehand and endorsed upon the contract, the condition that such changes should be noted on the contract was for the benefit of the surety as well as of the owner; it could not be waived by the latter alone, and changes not so noted and made without consent of the surety, discharged him. (Pp. 77–79.)

### 7.—Mechanic's Lien—Subcontractor.

A provision in a building contract that, notwithstanding the specifications for fire-proofing construction of a certain character the contract should be left open to bidders for any good system of fire-proofing, provided only the very finest work should be allowed to go in, did not make the contractor the agent for the owner, in letting the contract for fire-proofing, and the bidder accepted by him was his subcontractor, not dealing directly with the owner of the building; such subcontractor did not acquire a lien against the lot for the price by performance of his contract, but only a claim against the balance, if any, due the principal contractor from the owner after his lien was fixed. (Pp. 79–81.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

The San Antonio Loan & Trust Co. sued Lonergan & Co. and the American Surety Co. and Rapp intervened. Plaintiff had judgment against both defendants and intervener took nothing. Defendants and intervener appealed. The judgment of plaintiff against both defendants and intervener was affirmed. Intervener had a reversal of the judgment denying him a recovery against Lonergan & Co. and judgment rendered in his favor.

*P. H. Swearingen, Newton & Ward* and *Thos. W. Bullitt,* for plaintiffs in error the American Surety Co. and Thomas Lonergan & Co.—The building which Thomas Lonergan & Co. contracted to erect for the San Antonio Loan & Trust Co. fell not because of defective material or work, nor because of negligence or other default on the part of the contractors; but solely and exclusively because of fatal defects inherent in the "plans and specifications," made part of the contract. Therefore, Thomas Lonergan & Co. were not under obligation to rebuild the structure nor to repay to the Trust Company moneys received for work and material furnished pursuant to the contract. Bentley v. State, 73 Wis., 416; Filbert v. City of Philadelphia, 181 Pa. St., 530; McKnight F. S. Co. v. Mayor, etc., 54 N. E. Rep., 661; McRitchie v. City of Lake View, 30 Ill. App., 393, 398; Siebert v. Leonard, 17 Minn., 433; Dwyer v. State, 79 N. Y. Sup., 17; Clark v. Pope, 70 Ill., 128; Seymour v. Long Dock, 20 N. J. Eq., 396; Burke v. Dunbar, 128 Mass., 499; Murphy v. Liberty Bank, 39 Atl. Rep., 143; Beswick v. Platt, 21 Atl. Rep., 306.

If the principals in a contract, by agreement between themselves, without the knowledge or consent of a surety who guarantees its performance, alter the terms or conditions of the contract, the surety is thereby released. United States v. Freel, 92 Fed. Rep., 299, 306; Prairie State Bank v. U. S., 164 U. S., 227, 237; United States v. Boecker, 21 Wall., 652; United States v. Corwine, Fed. Cases, No. 14871; Trucker Lodge v. Wood, 14 Nev., 293, 309;

Killoren v. Meehan, 55 Mo. App., 427, 433; United States v. Case, Fed. Cases, No. 14742; Eldridge v. Fuhr, 59 Mo. App., 44; Stillman v. Wickham, 76 N. W. Rep., 1008; O'Neal v. Kelley, 65 Ark., 550; Miller-Jones Furniture Co. v. Ft. Smith, etc., Co., 50 S. W. Rep., 508.

*Stayton & Berry,* for plaintiff in error, Rapp.—The San Antonio Loan & Trust Company, having by its contract with Lonergan & Company, provided that the entire fire-proofing should be left open to bidders, and having included the cost thereof in the sum of their bid, it thereby appointed said Lonergan & Company its agents therefor, and authorized them to take bids and make the contract with this intervener, and said Loan & Trust Company is bound thereby. Clark v. Gillespie, 70 Texas, 515; Padgitt v. Dallas Brick & Construction Co., 92 Texas, 626; Johnson v. Amarillo Imp. Co., 88 Texas, 505; Berry v. McAdams, 93 Texas, 431; Bassett v. Mills, 89 Texas, 162; Strang v. Pray, 89 Texas, 525; Farmers' & M. Nat'l Bk. v. Taylor, 91 Texas, 80.

*Denman, Franklin & McGown,* for defendant in error.—By the terms of the contract Lonergan & Company agreed to build the house called for and deliver it complete to the Loan & Trust Company at the time specified but failed to do so. In such case the contractor is unconditionally bound to perform. Dermott v. Jones, 2 Wall. (U. S.), 10; School Trustees v. Bennett (N. J.), 72 Am. Dec., 375, 377; Weiss v. Devlin, 67 Texas, 510; Bartlett v. Bisbey, 66 S. W. Rep., 70; School District v. Dauchy, 25 Conn., 530; Adams v. Nichols, 19 Pick., 276; Tompkins v. Dudley, 25 N. Y., 277; Stees v. Leonard, 20 Minn., 494; Steele v. Buck, 61 Ill., 343; Kramer v. Cook, 73 Mass., 550; Davis v. Smith, 15 Mo., 467; Walton v. Waterhouse, 2 Saunders, 420 (part 2); Bullock v. Dommitt, 6 T. R., 650.

The owner does not warrant, and therefore is not responsible for the sufficiency of plans adopted by it, and which the contractor must follow, but the contractor must satisfy himself of their practicability before he enters into his contract. The contract in this case did not contain any warranty on the part of the San Antonio Loan & Trust Company to the effect that the plans and specifications furnished by it were correct and practicable, and none can be implied, even if there was a want of skill on the part of the architect. See authorities above. Also, Thorn v. Mayor of London, Court of Exchequer, Vol. 9, p. 163 (Law Reports); Same v. Same, Law Journal 1875, Vol. 44, New Series (Court of Exchequer), p. 62; Same v. Same, Law Journal 1876, Vol. 45, New Series, Bench Pleas and Exchequer, 487 (in the House of Lords); Leavitt v. Dover, 32 Atl. Rep., 156; Giles v. S. A. Foundry Co., 24 S. W. Rep., 547; Daegling v. Schwartz, 80 Ill., 322; Hooper v. Webb, 27 Minn., 485; Labaree & Co. v. Crossman, 92 N. Y. Supp., 565; White v. Von Waffenstein, 94 N. Y. Supp., 257.

The San Antonio Loan & Trust Company is entitled to recover

back from Lonergan & Company and sureties the sums already paid upon the contract, because the whole price was to be paid for the whole building. See authorities preceding and also the following: Bartlett v. Bisbey, 66 S. W. Rep., 70; School Trustees v. Bennett, 72 Am. Dec., 375.

The contract, by its own terms, reserved the right of the owner to make changes in the plans and specifications and the Surety Company must be held to have had this reserved right in contemplation at the time it signed the bond, and it is not in position to complain because the right was exercised. Getchell & Martin Lumber Co. v. Nat'l Surety Co., 100 N. W. Rep., 556; McLennan v. Wellington, 30 Pac. Rep., 183; Consaul v. Sheldon, 52 N. W. Rep., 1107; Smith v. Molleson (N. Y.), 42 N. E. Rep., 671; De Mattos v. Jordan, 46 Pac. Rep., 404; Young v. Young, 52 N. E. Rep., 777.

Where the contract as in this case provides that no alterations or extra work is to be done, except upon the price and additional time necessary to complete the same being agreed upon beforehand, and endorsed upon the contract, the owner may waive compliance with the provision; and the surety on the contractors' bond is not discharged because it has been disregarded. This condition of the contract being for the benefit of the owner, it could waive it and such waiver does not affect the liability of the Surety Company. Hohn v. Schideler, 72 N. E. Rep., 575; Cowles v. U. S. Fid. & Guar. Co., 72 Pac. Rep., 1032; Smith v. Molleson, 42 N. E. Rep., 669; Grafton v. Hinkley, 86 N. W. Rep., 859; Pac. Bridge Co. v. U. S. Fid. Co., 73 Pac. Rep., 775; Consaul v. Sheldon, 52 N. W. Rep., 1104; De Mattos v. Jordan, 46 Pac. Rep., 405; Hayden v. Cook, 52 N. W. Rep., 167.

MR. JUSTICE BROWN delivered the opinion of the court.

The San Antonio Loan & Trust Company instituted this suit against Thomas Lonergan & Company as principals and the American Surety Company of New York as its surety to recover damages for the breach of a contract and bond entered into by the said parties which we here copy: "Agreement made this 21st day of February, 1899, between San Antonio Loan & Trust Company of the one part, and Thomas Lonergan & Co., contractors, of the other part. Witnesseth: Said Thomas Lonergan & Co., contractors, hereby agree in consideration of the sum of forty-seven thousand five hundred dollars to erect and build for said San Antonio Loan & Trust Company, as per plans and specifications, made by Alfred Giles, Architect, of San Antonio, Texas, a certain building corner of Navarro and Commerce Streets, in the city of San Antonio, Bexar County, Texas. The entire work to be strictly in accordance with said drawings and specifications, and also do further agree to perform the whole of the intended works, matters, and things under the direction of, and to the entire satisfaction of the architect, whose decision is to be final and conclusive on all points. The entire Commerce and Navarro Street front to

be terra cotta set and pointed up in the best manner as per said plans and specifications and drawings."

Thomas Lonergan & Company executed a bond in the sum of $45,000 with the American Surety Company of New York as surety, payable to the San Antonio Loan & Trust Company, the conditions of which are as follows: "Now if the said Thos. Lonergan & Co., shall strictly and faithfully carry out and perform the said contract so entered into with said San Antonio Loan & Trust Company in all particulars as required by the terms thereof, and to the full approval of said architect, shall complete said works in the time required by this contract, shall save said San Antonio Loan & Trust Company harmless from all damages growing out of a negligent or unskillful performance of work under said contract, or resulting from any violation of any of the provisions contained in said specifications, or from a failure to comply with the same, from any cause whatever which specifications and drawings are hereby especially referred to and made a part hereof, . . . then and in this case this instrument to be null and void. Otherwise to remain in full force and effect."

By endorsement on the bond it was made to embrace the following supplemental contract: "This. agreement, made this 26th day of April, 1899, between The San Antonio Loan & Trust Co., of the one part, and Thos. Lonergan & Co., Contractors, of the other part. Witnesseth, ——. Said Thos. Lonergan & Co., Contractors, hereby agree in consideration of the sum of four thousand four hundred and fifty dollars ($4,450) to erect and build for said San Antonio Loan & Trust Company, as per plans and specifications made by Alfred Giles, architect, of said San Antonio Loan & Trust Co., being drawing No. 25, a certain west wall of the new building of said San Antonio Loan & Trust Co., now being constructed by said Thos. Lonergan & Co., under contract heretofore made between them and San Antonio Loan & Trust Co., which said building is situated at the corner of Navarro and Commerce Streets, situated in the city of San Antonio, Bexar County, Texas. The said wall to be strictly in accordance with the drawings and specifications prepared therefor by the said architect, and to be of skeleton construction with brick filling, and to be eight inches thick to the fifth floor, and the fifth floor to be twelve inches thick. The said Thos. Lonergan & Co. agree to perform the whole of said intended work, matters and things, under the direction and to the entire satisfaction of said architect, whose decision is to be final and conclusive on all points. The said San Antonio Loan & Trust Company agree to pay said contractor said sum of money at the times and on the terms and conditions specified and provided by said plans and specifications, and stipulations therein contained. One month additional time is allowed on original contract. Unavoidable delays in procuring beams shall be taken in favor of contractor."

The petition alleged that in pursuance of the said contract and bond, Thos. Lonergan & Co., entered upon the performance of the work of building the said house and prosecuted the same until it

was nearing completion, when the house fell, and that said Thos. Lonergan & Co. failed and refused to replace the said building but abandoned the said work. The plaintiff alleged that it had performed all of its promises in the said contract and in accordance with the terms thereof had paid to the said Thos. Lonergan & Co., for labor, materials, etc., the sum of $25,720. It was alleged that both Thos. Lonergan & Co. and the American Surety Company had refused to replace and rebuild the said house, whereby the plaintiff was damaged in the sum paid for materials, labor, etc., under the contract, and in other sums specified in the petition but not necessary to be stated here.

Thos. Lonergan & Company answered by general demurrer, special exceptions, by general denial and by special answer, setting up the following defenses. As a special defense to its obligation to rebuild the structure, Thos. Lonergan & Company alleged, in substance, that the building did not fall by reason of any defect in the material used by it in the construction of said building, nor for want of skill and care in the construction of same, but that the said collapse was caused solely by defects and imperfections in the plans and specifications furnished by the Loan & Trust Company to guide the said defendants in the performance of their work. That the said collapse was caused by want of skill on the part of the architect who represented the Loan & Trust Company, and want of care on his part as well as his directing the performance of things improper to be done and making changes in the original plans and specifications which weakened the building and caused its fall. There was no question made upon the sufficiency of the allegations in the answer to present the issue and we have not undertaken to set them out with any degree of particularity, but state in general terms the defenses presented. Thos. Lonergan & Co. pleaded that the architect, Giles, inspected the work and material and accepted the same at different times, whereby plaintiff was estopped to deny its liability therefor, and pleaded in reconvention against the plaintiff for the value of work done and material furnished and not paid for based upon the facts set up in the answer to the amount of $18,930.

The American Surety Company of New York adopted the answer of Thos. Lonergan & Co., presented general demurrer and special exceptions to plaintiff's petition, general denial of the allegations of the petition and pleaded specially that the contract between the plaintiff and Thos. Lonergan & Co., supplemented by the contract dated April 26, 1899, with the specifications and plans, which were made a part thereof, was incapable of execution or performance because of uncertainty therein, pointing out the uncertainty relied upon which is not necessary for us to set out at this time. The said Surety Company further pleaded that the specifications constituting a part of the original contract and the bond guaranteeing a performance of the contract by the said Thos. Lonergan & Co., contained certain provisions, which are set out in the plea, and then alleged that after the execution and delivery of the original contract dated February 21, 1899, and the execution and delivery

of the supplemental contract and bond, the San Antonio Loan & Trust Company and Thos. Lonergan & Co., without the knowledge or consent of the American Surety Company of New York, by an agreement entered into between themselves, altered in various and sundry ways the terms and conditions of the said original contract and supplemental contract and altered the amount and character of the materials to be used and the work to be done and agreed upon a performance by the said Thos. Lonergan & Company of certain extra additional work not mentioned in nor contemplated by the said original or supplemental contract. That at the time of the making of the said agreement as to the alterations no agreement was made as to the addition to or deduction from the original contract price on account thereof, nor upon the additional items necessary to complete the same nor was any such agreement reduced to writing and endorsed either upon the original or supplemental contract, nor was there any attempt to make an agreement with reference to either of these subjects, nor was the decision of the architect asked in reference thereto, nor were the changes noted on the contract, whereby the said American Surety Company was discharged from its obligations upon the bond as the surety of Thos. Lonergan & Company. The answer specified sixteen separate and distinct changes, alterations and items of extra work by which it was discharged, but they will not be inserted in this statement but referred to as may be necessary. The answer also contains a plea of estoppel in this, that the architect was to have full power to dismiss from the works, any man or men, for incompetency or misconduct, and the contractor should not have any right, without permission of the architect, to reinstate such person; also set up the provision in the specifications that in case of delay by the contractor in providing and delivering the requisite materials, or in the advancement of work, a deficiency of workmen, or for misconduct or inability, the architect should provide, at the expense of the contractor, all such materials and employ such number of workmen at the works as the architect may think proper and the cost and charges incurred shall be retained out of the contract and paid by a reservation from the estimates from time to time, or amounts thereof, which may be due as liquidated damages. It is claimed that by virtue of these provisions in the specifications the Loan & Trust Company did represent and guarantee to the defendant as surety of Thos. Lonergan & Company that Alfred Giles, acting for and on behalf of the San Antonio Loan & Trust Company, would continuously, as the work of construction progressed, superintend the construction of said building in accordance with such contract, plans and specifications, and that he would not permit to be used or would cause to be removed from said building all improper work and materials and when the same should have been inspected and its fitness decided upon and approved by the said architect the same should be received and considered by all parties as sufficient; that said architect did continuously inspect the said workmanship and character of materials used in the said building and did decide that the said materials and work were done in accordance with the con-

tract and specifications, etc., therefore that the Loan & Trust Company was estopped to assert against the American Surety Company the imperfection of any such materials or character of work.

"It was agreed upon the trial by all parties that the firm of Thos. Lonergan & Co. was dissolved by mutual agreement of its members on the 25th day of September, 1900, and that by the terms of the agreement of dissolution Thos. Lonergan took charge of all the property and assets of the firm and assumed all its liabilities. That since the institution of the suit P. S. Larkin, a member of the firm before its dissolution, died insolvent, leaving his widow and children as his sole heirs; that he had never been served with process in this case and never appeared nor submitted himself to the jurisdiction of the court; and his wife and children were non-residents of Texas, and though served with notice to appear and answer, have failed and refused to do so. Wherefore, Thos. Lonergan requested the court that this cause proceed against him individually and against the partnership, and that he be allowed to prosecute the same as such, and the American Surety Company, having also in open court requested that the case proceed without P. S. Larkin or his heirs being made parties, and agreed that it would make no objection to the cause proceeding without Larkin and his heirs or representatives being made parties, and the plaintiff and intervener having agreed that the cause so proceed, it was ordered by the court that P. S. Larkin individually and his widow and children and heirs be dismissed from the suit and that the cause proceed with plaintiff as plaintiff and the defendant Thos. Lonergan in his individual capacity and the firm of Thos. Lonergan & Co., and the American Surety Company of New York as defendants, and that Lonergan have the right in his individual capacity for and in behalf of said firm to defend said suit and prosecute the cross action."

John W. Rapp intervened in this suit alleging that he had under a contract with Lonergan & Company furnished labor and material for certain work which was done in the construction of the building, which labor and material amounted to the sum of $3,426.37. Rapp set up the fact that the building had been almost completed and that for reasons alleged in his intervention it fell and was destroyed. He claimed a judgment against Lonergan & Company for his debt and also prayed for a foreclosure of the mechanic's lien upon the lot on which the building was being constructed.

"Plaintiff answered intervener's petition by a general demurrer, general denial and plead specially that intervener being a contractor's laborer and material man should not recover, in that Lonergan & Co. abandoned their contract and never completed the building, nor delivered the same, the portion of the work done by Lonergan & Co., having been entirely destroyed and rendered utterly useless and valueless to plaintiff; that at the time of the collapse of said building plaintiff was not indebted to Lonergan & Co., and therefore not indebted to intervener. It also plead the statute of limitations of two and four years. Defendants Lonergan & Co. filed no answer to intervener's petition."

The Loan & Trust Company filed special exceptions to different portions of the answer of Thos. Lonergan & Company and of the American Surety Company. Each exception raised the question of the legal sufficiency of the allegation to constitute a defense to the plaintiff's action. The exceptions were sustained, which action of the court is assigned as error here and we will state more fully the exceptions when we come to · discuss each assignment of error.

The Surety Company and Thos. Lonergan & Company make a common defense against this suit upon the contract, which we will first consider and then examine into the defense made by the Surety Company independently of the other defendant. In order to determine the scope of the contract; that is, what the plaintiffs in error undertook to do, we must look to the contract itself, the specifications which are made a part of it and to the bond given to secure the performance of it. The effect of these instruments is that Thos. Lonergan & Company covenanted and agreed with the San Antonio Loan & Trust Company to build upon · the lot specified a structure in accordance with the specifications and plans submitted by the Trust Company and to complete the said structure to the satisfaction of the architect, Alfred Giles. It is not disputed that Lonergan & Company failed to complete the building in accordance with the specifications and contract, and there is no question made of the proposition that, having so failed, Thos. Lonergan & Company and their surety are liable to the Loan & Trust Company for the damages sustained by the failure, unless they show some lawful excuse for not fulfilling their contract.

It is alleged by the plaintiffs in error that the destruction of the building was caused by ·defects in the specifications furnished by the owner and that the Loan & Trust Company expressly guaranteed ˙ the sufficiency of the specifications, and, if not expressed, the terms of that contract are such that the law will imply a guaranty in favor of the builder. In support of this defense the plaintiffs in error cite the following clause of the specifications: "The owner being bound in all cases to recognize the acts of the architect, not only as regards extra work, but also as to the sufficiency of the design, material and workmanship."

The plaintiffs in error have presented their objections to the judgment of the trial court and of the Court of Civil Appeals by many assignments, but by careful grouping and clear propositions of law under each group the questions to be considered have been reduced to a small compass. The careful preparation of this case by the attorneys of all parties has been of much assistance to this court in making a thorough investigation of the interesting questions presented.

The most important question in this case stands at the threshold of the investigation and is presented in this concise form in the application for writ of error: "The building which Thos. Lonergan & Company contracted to erect for the San Antonio Loan & Trust Company fell, not because of defective material or work, nor because of negligence or other default on the part of the contractors, but solely and exclusively because of fatal defects inherent in the

'plans and specifications,' made part of the contract. Therefore, Thos. Lonergan & Company were not under obligation to rebuild the structure · nor to repay to the Trust Company moneys received for work and material furnished pursuant to the contract."

Plaintiffs in error cite in support of that proposition Thompson v. Chaffee (89 S. W. Rep., 285), decided by the Court of Civil Appeals of the First District. The facts were that Thompson and Chaffee made a contract for the erection of a building by Chaffee based upon specifications furnished by the owner. The building collapsed before completion and it was claimed to have been caused by defects in the specifications. In the trial court judgment was given against Thompson and the Court of Civil Appeals in passing upon the case made this statement of Chaffee's defenses: "That he had undertaken the construction of the house and it was nearing completion, when it fell on account of defective plans, for which he was in no wise responsible and against which he had protested." Announcing its conclusions the court said: "As between the plaintiff and Chaffee, her suit must stand or fall on the plans sued on. It being undisputed, also, that these plans contained the feature to the weakness of which Chaffee ascribes the fall of the building, a finding of the jury sustaining that defense would sustain the judgment as it stands." There is no discussion of the question, and no authority cited in support of the conclusion, and we think that the learned judge who wrote the opinion would not have so summarily disposed of a question of such importance if it had been involved in the decision. Besides, there seems to have been an issue that after the contract was executed a change in the specifications was made over the protest of Chaffee which caused the loss of the building. The decision does not rest upon imperfections of the original specifications and is not in point.

In support of their proposition plaintiffs in error rely upon Bentley v. The State (73 Wis., 416), which counsel for defendant in error has attempted to distinguish from this case, but we are of opinion that it is well in point and, if sound in doctrine, would require the reversal of this judgment. The facts of that case were that the State of Wisconsin, desiring to add to her Capitol building, enacted a statute by which a commission was created to let the contract for the work and to perform all the acts necessary to secure its construction. The statute authorized the commission to employ an architect who should prepare the plans and specifications for the structure and superintend the work, representing the State in the course of the work. In pursuance of the statute the commission by public notice invited bids to be presented to the commission and directed all bidders to call upon the architect for inspection of the plans and specifications. Bentley and his associates submitted a bid for the work which was accepted. The specifications were made a part of the contract and provided for the supervision and control by the architect. When the work was well advanced towards completion, a part of the structure fell, from defects in the specifications. Bentley restored that portion of the building at an expense of about $20,000 and completed the work. The commis-

sion refused to pay the cost of restoring that portion of the walls and Bentley sued the State to recover the cost of material and labor and for money expended in the work of restoration. The Supreme Court of Wisconsin held in that case that the State was liable for the loss sustained by Bentley on account of the defects in the plans and specifications; in other words, that the State of Wisconsin stood as guarantor for the sufficiency of the specifications furnished by the architect. The conclusion of the court was announced in these words: "According to such facts, the State undertook to furnish suitable plans and specifications, and required the plaintiffs to conform thereto, and assumed control and supervision of the execution thereof, and thereby took the risk of their efficiency. What was thus done, or omitted to be done, by the architect, must be deemed to have been done or omitted by the State. Moreover, we must hold, notwithstanding the English case cited, that the language of the contract is such as to fairly imply an undertaking on the part of the State that such architect had sufficient learning, experience, skill and judgment to properly perform the work thus required of him, and that such plans, drawings, and specifications were suitable and efficient for the purpose designed." From the standpoint of the contractor, the court clearly and forcibly laid down the proposition which is ably presented in this case. Realizing that their decision was in conflict with the case of Thorn v. Mayor, &c., L. R., 1. App. Cas., 120, relied upon in that case as in this by the defendant in error, the Supreme Court of Wisconsin criticised the English case thus: "The value of such decisions as authority, however, is somewhat impaired by reason of the uncertainty as to the precise grounds upon which they are based. This grows out of the fact, so common among English decisions especially of the present day, of rendering numerous opinions in the same case. Thus, in that case, there were five different opinions rendered in the Exchequer Chamber, and four in the House of Lords. Each of these opinions puts such decision upon grounds differing more or less from some, if not all, of the others." An examination of Thorn v. Mayor, will show that the four opinions delivered in the House of Lords are in perfect agreement upon the main question decided in the case, in fact, there is no conflict. Some reasons are assigned in each case not found in the other opinions, but that adds strength to it instead of weakening the authority of the case. The conclusion reached by the House of Lords in that case is entirely consistent with the fundamental principles that underlie the law of contracts, and is in harmony with the decisions of the American courts upon this class of contracts as to the obligation of the contracting parties and their relations to each other. In Bentley v. The State, the Supreme Court of Wisconsin ignores the fact that this is a matter of contract in which the parties are at arm's length; the opinion is pregnant with the idea that there was a duty resting on the State to take care of the bidders with whom it was dealing, but there is no reason for charging the builder with such duty to the contractor. In the case under consideration the parties were each competent to

contract, and there is no circumstance indicating the slightest unfairness in the transaction. The transaction may be fairly summarized thus: The Loan & Trust Company owned a lot upon which it desired to build a house, and employed an architect in whom its officers had confidence to prepare the plans and specifications. The Trust Company was willing to risk the skill of the architect and submitted the specifications to bidders for inspection and for their own determination as to whether or not they were willing to bind themselves to build the house in pursuance of and in accordance with the specifications as prepared. The owner being satisfied with the specifications the contractors were called upon to exercise their own judgment and if they were not competent to judge for themselves it became their duty to protect their interests by procuring such aid as was necessary to put them in possession of the facts. There is no more reason why the Loan & Trust Company should be held responsible for the alleged defects in the specifications that it did not discover for want of skill and knowledge of the business of an architect, than there is for holding Thos. Lonergan & Company to be bound by their acceptance of the defective plans which they understood as well as the Trust Company did and in all probability much better. The fact that Lonergan & Co. contracted to construct the building according to the specifications furnished implied that they understood the plans. Clark v. Pope, 70 Ill., 133; Lloyd Bldg. Con., sec. 4. In Bentley v. The State, the Supreme Court of Wisconsin say: "The State undertook to furnish suitable plans and specifications," &c., but we find no such undertaking expressed in that contract, and if the State either expressly and by implication so covenanted, then that case is not like this in the facts and the decision is not applicable here. If that court attached to the contract the obligation "to furnish suitable specifications" as a matter of law, it assumes the proposition under discussion, and asserts in different words that the law imports into such a contract a guaranty of the specifications without regard to the intention of the parties. Bentley v. The State, rests upon a fallacy which would be destructive of the basic principles of contracts, while Thorn v. Mayor, is bottomed upon and supported by the well recognized and long established rule of law, that in the absence of fraud or other improper influence competent persons may make their own contracts for lawful purposes and will be required to perform them. Dermott v. Jones, 2 Wall., 7, We are of opinion that the rule announced in the English case is sound in principle and ought to be applied to such contracts. We therefore hold that the Loan & Trust Co. was not bound as guarantor of the sufficiency of the specifications as a legal consequence of submitting them for bids on the work and entering into the contract.

If there be any obligation resting upon the Loan & Trust Co., as guarantor of the sufficiency of the specifications, it must be found expressed in the language of the contract, or there must be found in that contract such language as will justify the court in concluding that the parties intended that the Loan & Trust Co. should

guarantee the sufficiency of the specifications to Thos. Lonergan & Co. This brings us to the consideration of the language of the contract itself. We believe that no provision in the contract has been invoked as containing any express guaranty except the following clause: "The owner being bound in all cases to recognize the acts of the architect not only as regards extra work but also as to the sufficiency of the design, material and workmanship." Disconnected from the context, this language might be construed to apply to the design or specification for the building of the house, but when read in connection with that which goes before and that which follows we think it can not be so understood. The sentence quoted is found between two paragraphs and its meaning is shown by the following extract:

"The owner reserves the right, by conferring with the architect to alter or modify the design or to add to or diminish from the contract price, the architect being at liberty to make any alterations in the plans, form, construction, detail or execution described by the drawings and specifications without invalidating or rendering void the contract and in case of any difference of expense, an addition to or abatement from the contract shall be made in the ratio or proportion such work may bear to the whole contract work agreed to be performed, and the same to be determined as before mentioned.

"The owner being bound in all cases to recognize the acts of the architect, not only as regards extra work, but also as to the sufficiency of the design, material and workmanship.

"No alterations or extra work to be done except upon the price and additional time necessary to complete same being agreed upon beforehand, and endorsed upon the contract; and in case no agreement could be effected between the owner and the contractor in regard to the price for alterations or modifications, as above referred to, the decision of the architect is to be final and conclusive."

It is quite evident that the subject here treated of is the changes which might be made by the owner through the action of the architect which might involve some change in the plans for executing the work as well as some changes in the material. This was to be under the supervision and control of the architect and that clause which is relied upon by the plaintiffs in error and quoted hereinbefore was evidently inserted to protect the builders, Lonergan & Company, against any future claims by the Loan & Trust Company that the work had not been done according to the terms and specifications embraced in the original contract. In other words, the owner, in exercising the right to make these changes, agreed to be bound by whatever the architect should do to accomplish the changes. The "design" mentioned did not refer to the original plan.

We have not been able to find, from a careful examination of the contract and specifications, any terms used therein from which we think there could by any fair construction arise by implication a guaranty of the sufficiency of the specifications, and no such clause has been pointed out. The plaintiffs in error claim that

this can be derived from the fact that the architect is to have supervision and control of all the work and other circumstances of that character, but these are provisions simply for the protection of the owner, who was represented in the execution of the work by the architect, while the builder represented himself.

We are of opinion that Thos. Lonergan & Co., having failed to comply with their agreement to construct and complete the building in accordance with the contract and the specifications, must be held responsible for the loss, notwithstanding the fact that the house fell by reason of its weakness arising out of defects in the specifications and without any fault on the part of the builder. Dermott v. Jones, 2 Wall., 8; School Dist. v. Dauchy, 25 Conn., 535; Superintendent v. Bennett, 3 Dutcher, 513; Clark v. Pope, 70 Ill., 133.

Counsel for plaintiffs in error have cited many cases in which the courts have said that the builder or contractor does not guaranty the sufficiency of the specifications. It is a correct proposition, because the specifications are, as a matter of law, not guaranteed by either party to the other. In the cases cited we believe that without exception the contractor had performed his work according to the terms of his agreement and had fulfilled his contract by finishing the structure, terminating his relation as contractor, after which the house was destroyed by some accident or calamity, or had fallen from some defect or weakness in the structure or fault of the soil, and in such cases the courts have held that the contractor does not guarantee the sufficiency of the specifications but only the skill with which he performs his work and the soundness of the material used therein. He is therefore not liable for the destruction of the building after he has performed his agreement by completing the structure. Clark v. Pope, 70 Ill., 132.

It has been just as uniformly held, however, that whenever the building or structure has been destroyed by reason of any defect in the work done, or by any accident or any means whatever before the contract has been completed, then the contractor must bear the loss, no matter what might be the occasion thereof, unless it be some wrong done by the owner subsequent to the making of the contract which caused the fall. Liability of the builder does not rest upon a guaranty of the specifications but upon his failure to perform his contract to complete and deliver the structure.

Counsel for defendant in error have not denied that the allegations of the plea of the Surety Company show such material changes to have been made in the contract without its consent as would ordinarily discharge the surety from liability upon its bond. We shall, therefore, not cite authority, nor adduce argument, to sustain that general proposition, but we will examine the contentions of the defendant in error which are expressed in two propositions, the first of which we copy: "The bond of the American Surety Company in this case is, in its nature, an insurance contract to indemnify the Loan & Trust Company against defaults of Lonergan & Company, and as such must be construed like any other contract of insurance, that is, if it is susceptible of two construc-

tions, one favorable and the other unfavorable to the Surety Company, the latter, if consistent with the object for which the contract was made, must be adopted." The Honorable Court of Civil Appeals sustained this proposition, holding that the Surety Company was in this case not entitled to the same protection of the law that would be accorded to a surety who executed the same bond without compensation and cite the following cases in support of that conclusion: "Cowles v. U. S. Fid. & Guar. Co., 72 Pac., 1033; Pac. Bridge Co. v. U. S. Fid. Co., 73 Pac., 775." Both of the cases cited were decided by the Supreme Court of Washington. In neither case is any reason assigned why there should be a difference in the rights of a compensated and voluntary surety, and we have been unable to discover a plausible ground for such distinction. How it could be that receiving compensation by the surety would affect the relation between the surety on the bond and the owner of the building has not been suggested by counsel and is not apparent to us. The well established rule that material changes in the contract, made without the consent of the surety, will discharge him from liability, is based upon the clear and distinct ground that the surety's obligation is to answer for the contract as it is made and a material change destroys that contract and substitutes a new one, for which the surety has not contracted to be responsible. Why should a compensated, any more than a voluntary, surety be held to guarantee a contract to which he has not consented? The proposition antagonizes the fundamental requirement that to make a valid contract the minds of the contracting parties must meet and agree upon its terms. We are of opinion that the holding of the Court of Civil Appeals upon this question was error.

The defendant in error asserts that the provision of the contract, which is claimed to have been violated, was made for its benefit, therefore it had the right to waive that violation. The second proposition is in these words: "Where the contract as in this case provides that no alteration or extra work is to be done, except upon the price and additional time necessary to complete the same being agreed upon beforehand, and endorsed upon the contract, the owner may waive compliance with the provision; and the surety on the contractors' bond is not discharged because it has been disregarded. This condition of the contract being for the benefit of the owner, it could waive it and such waiver does not affect the liability of the Surety Company." This proposition was also sustained by the Court of Civil Appeals, in support of which it cited the following cases: Hohn v. Schideler, 72 N. E. Rep., 574; Cowles v. U. S. Fid. & Guar. Co., 72 Pac. Rep., 1033; Pac. Bridge Co. v. U. S. Fid. & Guar. Co., 73 Pac. Rep., 775. The general rule upon this subject is that any material change made in the contract upon which the bond is predicated, without the consent of the surety, will release the surety whether that change be for his benefit or not. Lane & Saylor v. Scott & Culwell, 57 Texas, 370. In that case the court said: "It is a further well established principle, that when the original contract has been thus varied, a

court of equity will discharge the surety without further inquiry as to whether he has been prejudiced or benefited by it, for the reason that this question as a general rule, would not be a practicable one." If we admit, however, that the failure to comply with a stipulation in the contract which was solely for the benefit of the owner would not discharge the surety, still we have the question whether the provision which was claimed to have been disregarded in this instance was not for the benefit of the surety also and that therefore the rule which has been invoked would not apply to the facts of this case. For the sake of convenience we here again copy the two provisions of the contract which are brought in question by this proposition:

"The owner reserves the right, by conferring with the architect, to alter or modify the design or to add to or diminish from the contract price, the architect being at liberty to make any alterations in the plans, form, construction, detail or execution described by the drawings and specifications without invalidating or rendering void the contract and in case of any difference of expense, an addition to or abatement from the contract shall be made in the ratio or proportion such work may bear to the whole contract work agreed to be performed, and the same to be determined as before mentioned.

"No alterations or extra work to be done except upon the price and additional time necessary to complete some being agreed upon beforehand, and endorsed upon the contract; and in case no agreement could be effected between the owner and the contractor in regard to the price for alterations or modifications, as above referred to, the decision of the architect is to be final and conclusive."

It may be admitted that the first paragraph above quoted was inserted solely for the benefit of the owner of the property, it confers authority to make changes which could be made by no other person, but it is not for a disregard of that clause of the contract that complaint is made, therefore, that clause can not be considered in determining the rights of the parties under this proposition. It was in the interest of the owner of the property that the changes in the prices to be paid and other matters connected with those changes should be in writing as required by the second clause, so that there could be no controversy as to the extent of the changes to be made nor the compensation to be paid. It was not solely for the owner's benefit, for the contractor and the surety were likewise interested in the observance of the second clause above quoted. The Trust Company might have waived the performance of an act to be done by Lonergan & Company which was for the benefit of the Trust Company only, but how could it waive the performance by itself of a condition upon which its authority to make changes rested? It is distinctly provided that the owner can not make changes provided for in the first clause, except upon the condition that such changes shall be noted on the contract. This is clearly not in the interest of the owner alone, for it could not be said that in his own interest a limitation would be placed upon his action. The terms in which the limitation is expressed clearly

indicate that it is intended principally to protect the contractor and the surety against any claim on the part of the owner not expressed in the written contract. In other words, it was the intention of the parties that the whole contract including changes made by authority of its terms should be in writing for the mutual benefit of the owner, the contractor and the surety, and a failure by the owner to comply with such a provision could not be waived by him and the principal as against the surety upon the bond. Bryan v. Morton, 65 Texas, 262. In the case cited the contract provided that the owner of the property should retain certain sums of the contract price in his hands. He failed to do so and the surety set up that this was a failure to perform the contract and was virtually a change of the contract as to him. It was therefore claimed that it was a provision for the protection of the owner and could not be waived. The court said: "This was a part of the contract for the protection of the owner of the property, but it gave a guaranty to the sureties that the work would not be paid for until it was done. This tended to their protection, and, if a part of the work was not done by their principal, the owner ought to have retained a fund in his hands, at least equal to the contract price for the work not done, which would have lessened the liability of the sureties to him on failure of their principal to comply with his contract. This he did not do, but on the contrary, he paid to their principal, in violation of the contract, the full price to which he would have been entitled had he performed the entire work." It was held in that case that the violation of the contract discharged the sureties. That case is in point and is a complete answer to the contention of the defendant in error upon this branch of the case. We conclude that the changes made in the contract, without the consent of the American Surety Company, operated to discharge that company from liability upon the bond.

John W. Rapp intervened in this suit in the District Court claiming, (1) that the contract for the construction of the building made Lonergan & Company the agents for the Trust Company to contract for the fire proofing, and that his contract was made with the Trust Company, through its agents, Lonergan & Company, and not with Lonergan & Company as contractors; (2) that he furnished the material and did the work as specified in his petition of intervention, and that he gave notice of his claim as required by law to the owner, the Trust Company, and thereby acquired a lien upon the lots on which the house was being constructed to secure his debt against Lonergan & Company. The builder, Lonergan & Company, undertook in the construction of the house to do the fire proofing, the cost of which was included in the sum to be paid by the owner for the construction and completion of the building. The specifications contained these provisions: "The drawings are made for using expanded metal lathing and concrete for all fire proofing and all partitions and lathing and as otherwise specified but the entire proofing to be left open to bidders for any good system of fire proofing." Again, "It is particularly to be understood that whatever system of fire proofing

is adopted, only the very finest work will be allowed to go in, and none other need be figured upon." Manifestly these clauses did not in any way take from the contractor power to control the fire proofing, except that it required that bids should be received for any kind of good fire proofing and should not be confined to the lathing and concrete expressed in the specifications, and the last quotation shows the purpose was to secure the best fire proofing that was to be had. The language is not susceptible of the construction placed upon it by counsel for Rapp.

The evidence of Giles, the architect, shows that at the time the notice of Rapp's claim was served on him as architect the Trust Company had in its hands about $6,430, being twenty per cent of the estimates previously made upon the work and for which payments had been made. The twenty per cent was by the contract reserved by the company for its own protection and to be paid only when the building was completed and the contract complied with, therefore, it was not subject to the claim of the plaintiff, because it was not due to Lonergan & Company. Between the time when the notice was given by Rapp and the collapse of the building there was work done upon the structure which was never estimated, and, as payments were to be made only upon the estimate of the architect, there was not at any time a sum which Lonergan & Company had a right to demand.

The proceeding prescribed by the statute by which a material man is permitted to fix a lien for material furnished by him and used in the erection of an improvement does not create a debt against the owner of the property but operates as a writ of garnishment would and appropriates so much of the money in the hands of the owner as is then due and payable or may become due and payable to the contractor to the extent necessary to establish that claim. Fullenwider v. Longmoore, 73 Texas, 480. In the case cited the court says of a similar proceeding: "The lien acquired is, however, in all cases subordinate and never superior to the terms of the contract. No original indebtedness is created by establishing the lien. The debt of the owner of the property as fixed by the contract can not be modified, changed or enlarged by the proceedings fixing the lien. These proceedings do no more than establish a lien against the property for such amount as is unpaid and is payable by the terms of the contract when the proceedings are commenced. From the time of the service of the notice upon the owner of the property he can make no further payment to the contractor without incurring liability for the lien debt, if proper steps shall be taken to establish it, to the extent of his indebtedness under the contract when the notice is served. If the owner of the property is indebted to the contractor the service of the notice, if followed by the acts required to fix the lien, secures the fund as does a writ of garnishment in an ordinary case, except that a pro rata distribution may become necessary by the terms of the statute between different lien holders and the process of collecting the money is different." The owner of the property is liable to the material man only as he, the owner, would be liable

to the contractor. Under the facts Lonergan & Company can not recover against the Trust Company, therefore, Rapp can not enforce a lien upon the lots, nor recover from the Trust Company for the value of materials and work done for Lonergan & Company. Riter & Conley v. Oil Co., 19 Texas Civ. App., 519; Ricker v. Schadt, 5 Texas Civ. App., 465. We are of opinion that there was no error in the charge of the court and the judgment of the trial court and of the Court of Civil Appeals as between Rapp and the original contractor and also as between Rapp and the Trust Company are affirmed.

It is ordered that the judgment of the District Court and of the Court of Civil Appeals in favor of the San Antonio Loan & Trust Company against Thos. Lonergan be and the same is in all things affirmed. And it is further ordered that the judgment of said courts in favor of the San Antonio Loan & Trust Company against The American Surety Company be and the same is hereby reversed and remanded for trial, except as to the issues determined by the judgment as between the San Antonio Loan & Trust Company and Thos. Lonergan. It is ordered that the San Antonio Loan & Trust Company recover all costs of all of the courts as against Thomas Lonergan and John Rapp, but that the American Surety Company recover of the said San Antonio Loan & Trust Company its costs in the Court of Civil Appeals and in this court.

#### ON MOTION OF JOHN W. RAPP, FOR A REHEARING.

The judgment in this case will be corrected by interlineation so as to affirm the judgment of the Court of Civil Appeals as between John W. Rapp and Thos. Lonergan & Company and affirm the judgments of the District Court and Court of Civil Appeals as between John W. Rapp and the San Antonio Loan & Trust Company. And said judgment will be corrected by interlineation so as to award the costs as between them in favor of John W. Rapp against Thos. Lonergan and Thos. Lonergan & Company, and also to award the costs as between them in favor of the San Antonio Loan & Trust Company against the said John W. Rapp. And the opinion of this court will be corrected by erasing the words, "of the trial court and," so that the opinion will read, "and the judgment of the Court of Civil Appeals as between Rapp and the original contractor and also between Rapp and the Trust Company is affirmed."

The motion for rehearing is overruled.

*Affirmed in part and reversed and remanded in part.*