Sam BENSON et al., d/b/a The Town Pump, Appellants,

v.

GUNN & BRIGGS, INC., Appellee.

No. 16995.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 28, 1969.

Rehearing Denied March 28, 1969.

Simon & Simon, and Sheldon Anisman, Fort Worth, for appellants.

James E. Wright and Earl Rutledge, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

The appeal is from a summary judgment granted on motion of a defendant.

Affirmed.

Defendant Gunn & Briggs, Inc., was in the business of manufacturing, selling and installing a product known as a suspended acoustical ceiling. Plaintiffs Sam Benson and Kenneth C. Benson, d/b/a The Town Pump, operated premises used as a lounge and bar. Connection with the transaction was by Sam Benson, and in the opinion we will speak of plaintiff as in the singular. Plaintiff telephoned defendant and stated his desire to have a new (lower) ceiling placed on the premises. Defendant, through agent, visited the premises and contracted with plaintiff for the installation of its suspended acoustical ceiling. Pursuant to oral contract the ceiling was installed and the contract completed. Approximately six months later, during the night, the ceiling fell so that it became completely destroyed. Damage to other of plaintiff's property also resulted.

Before the court on defendant's Motion for Summary Judgment, presented under provisions of Texas Rules of Civil Procedure, rule 166–A, "Summary Judgment", was a deposition taken from plaintiff and an affidavit of Ray Commander, agent for the defendant charged with duty of making and completing the contract with plaintiff. The plaintiff's reply to the defendant's motion was supported by the affidavit of James Van Gorder, consulting engineer.

The method of ceiling installation and cause of its fall is of importance. Visible condition of the existing ceiling at the time Ray Commander visited the premises upon invitation of plaintiff appeared to be adequate to support the new ceiling. However, no inspection was made to ascertain adequacy of this support. It was a plaster ceiling on metal lathe. The metal lathe was attached to 1″ x 4″ boards. These boards were supported by nails driven through them and into 2″ x 4″ boards which were the joists. These 2″ x 4″ boards were adequately attached to metal roof supports. The nails holding the 1″ x 4″ boards pulled out and simultaneously with the release of the said boards, the metal lathe and plaster ceiling, and the suspended acoustical ceiling installed by defendant fell at plaintiff's premises. The new suspended acoustical ceiling was attached to the old ceiling by the screwing of "eye-bolts" through the old plaster and lathe and into the 1″ x 4″ boards aforementioned. The fall of the ceiling was not attributable to any inadequacy in the installation of the new suspended acoustical ceiling. It was attributable to the inadequacy of the attachment

of the old ceiling to its own supports. In other words the attachment by way of nails driven through the 1″ x 4″ boards into the 2″ x 4″ timbers—sufficient for purposes of supporting the old ceiling—proved insufficient to hold both the old ceiling and the new ceiling. The combined weight of the two ceilings operated to loosen the boards and timbers, one from the other, and the nails pulled loose from the 2″ x 4″ timbers allowing both ceilings—along with the 1″ x 4″ boards—to collapse and fall.

In plaintiff's deposition he stated that he did remodeling to the premises other than the installation of the new suspended acoustical ceiling. He did not consult with anyone such as an architect or engineer concerning remodeling plans. He conceded that "in a sense" he employed a general contractor in connection with the remodeling. The man to which reference was made was Thomas E. McLeroy. Plaintiff stated that McLeroy was a carpenter who would do odd jobs for him and would advise him on different things, i. e., "like if I'd want electrical work to be done, why, he would tell me."

Relative to the parties' agreement upon the contract plaintiff stated that he talked only with Ray Commander and the man who came with him at the time of the discussion and agreement. Such occurred upon defendant's first visiting the premises. There was never any written contract, nor were there any plans or specifications of which plaintiff had knowledge. The following is quoted from plaintiff's deposition:

"Q. What did they (defendants) tell you that they were going to do?

"A. They were going to hang this suspended ceiling, and they told me the type of material that they were going to use, and that's about all.

"Q. Did they tell you how they planned to hang that ceiling?

"A. No, sir. I didn't even question that part of it.

"Q. You saw no reason to question it?

"A. No, sir. I was going to rely on them to put me in a good ceiling.

"* * *

"Q. Did Gunn & Briggs agree to perform any service other than installing the suspended ceiling?

"A. No, sir.

"Q. Did you have anyone on the job as a superintendent or supervising the installation of the ceiling—

"A. No, sir.

"Q. —from your standpoint?

"A. No, sir.

"Q. What about Mr. Mack (McLeroy)? Did he act as a coordinator, in any respect, of the installation?

"A. No, sir, not in this ceiling thing. He was doing some carpenter work at the time, but he had nothing to do with the ceiling part of it.

"* * *

"Q. When you were discussing with Mr. Commander, the representative of Gunn & Briggs, the installation of a new ceiling, did you discuss only this specific type of acoustical ceiling, or did you discuss a number of acoustical ceilings?

"A. We didn't discuss it in that way. All I did was ask them for the type of ceiling that they thought would be the best in there, and this is the type of ceiling they said."

We quote from the affidavit of Ray Commander, as follows:

"Sometime in January or February of 1966, I made an estimate while working for Gunn & Briggs, Inc. to install a new suspended acoustical tile ceiling inside a building known as the Town Pump Bar. The customer for whom this estimate was prepared was a Mr. Sam Benson. He called me and informed me that he wanted an

acoustical tile suspended ceiling installed inside of the Town Pump Bar. He instructed me to get in touch with his carpenter foreman, a Mr. Thomas E. McLeroy, in order to work out the details of how the new suspended acoustical tile ceiling was to be installed. At no time did either Mr. Benson or Mr. McLeroy mention inspection of the existing plaster ceiling at the Town Pump Bar. I met Mr. McLeroy at the Town Pump Bar, and Mr. McLeroy instructed me to tie the acoustical tile ceiling which Gunn & Briggs, Inc. was to install into the existing plaster ceiling on the premises at that time. * * *

"Mr. McLeroy was the only person Mr. Benson told me to deal with concerning the installation of the new ceiling, and the manner in which it was to be installed, and he told me to hang the suspended (to the) then existing plaster ceiling, and I did so at his request. Mr. McLeroy was present during the installation of the new suspended ceiling. At no time did either Mr. Benson or Mr. McLeroy mention inspecting the existing plaster ceiling. The entire agreement was oral, and there was no written contract covering any of the operations of Gunn & Briggs, Inc. at the Town Pump concerning the installation of the suspended ceiling."

Nothing was filed in opposition to the statement of the affidavit of Ray Commander. In particular, no affidavit countered Commander's statement that plaintiff directed him to "work out the details of how the new suspended acoustical tile ceiling was to be installed" with McLeroy, or his statement that McLeroy "instructed me to tie the acoustical tile ceiling * * * into the existing plaster ceiling". We find nothing in plaintiff's deposition which would entitle us to consider that a denial could be implied as to this part of Mr. Commander's affidavit.

■ Of course Mr. Commander is an interested party, or was at time he made his affidavit. However, the testimony to which we have referred was never countered by a denial. That being the situation posed before the trial court at time of the hearing of the defendant's Motion for Summary Judgment it is our conclusion that defendant must be treated as having established a right thereto, there being nothing countering the proof by which such right is to be considered established. McDonald, Texas Civil Practice, Sec. 17.26.3, "(New) —Summary Judgment, C. Procedure. (II) Reply to Motion. (b) Contents of reply affidavits."

■ Standing undenied, Mr. Commander's affidavit makes of the case one ruled by the same principles of law by which we found ourselves controlled in Our Lady of Victory College & A. v. Maxwell Steel Co., 278 S.W.2d 321 (Fort Worth, Tex.Civ.App., 1955, writ ref., n. r. e.), and the motion must be deemed sufficient to demonstrate the absence of disputed issues of ultimate fact. Displayed, and undenied, are circumstances showing the case as one which would be governed by the rule that where a builder, who has been engaged to superadd to a structure already built, has completed his work as contracted, according to plans (to be deemed) agreed upon, he is not responsible for the subsequent destruction of the building caused by its own inherent weakness.

The rules are different in instances of building collapse before a structure is completed from those in instances where a contractor has fully performed his agreement by completing a structure. Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061, 1067 (1907). The instant case is ruled by principles applicable to completed structures. There is no principle of law, applicable to negligence or contract cases, under the facts existent before the trial court at time of consideration of the Motion for Summary Judgment, operative to remove the case from the class controlled by the rules discussed in Our Lady of Victory College & A. v. Maxwell Steel Co., supra.

Judgment is affirmed.