**H.L. BROWN, Jr., Appellant,**

v.

**WELLTECH, INC., Appellee.**

**No. 08–88–00175–CV.**

Court of Appeals of Texas,
El Paso.

March 29, 1989.

Rehearing Denied May 10 and
May 24, 1989.

Harrell Feldt, Penelope E. Nicholson, Vinson & Elkins, Houston, for appellant.

James P. Boldrick, Dick R. Holland, Boldrick & Clifton, Midland, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an oil and gas suit brought by the operator, H.L. Brown, Jr., against the driller, WellTech, Inc., for damages arising out of the loss of an oil and gas well and the drilling of a replacement well, and a counterclaim brought by the driller against the operator on a sworn account. Following a jury trial, judgment was rendered denying the operator any recovery on his claim and awarding the driller the sum of $153,108.95 together with prejudgment interest against the operator on the sworn account. From such judgment, both parties appeal. We reverse and render.

Brown is an independent oil operator doing business in Midland, Texas. In 1981, Brown acquired a lease in Lea County, New Mexico. The lease had an existing well on it that had been previously drilled to 9,700 feet, plugged and abandoned. Brown decided initially to deepen the well, known as Shell State No. 1, by an additional 3,000 feet, which was carried out successfully by another driller not a party to this lawsuit. Brown, encouraged by the results, then decided to deepen the well by another 700 feet in hopes of encountering another formation. Brown contacted Well-Tech, an oil field service company, and the parties then entered into an oral agreement whereby WellTech agreed to furnish the rig, certain equipment and the crew to drill the well 700 feet deeper at a price of $5,850.00 per day for the first five days and $5,300.00 per day thereafter. On or about March 5, 1983, WellTech's crew arrived at the well site and began work on the project. On March 12, 1983, while the crew was in the process of pulling the drill pipe out of the hole, the elevators which held the pipe came open and the pipe string fell back into the hole. Unsuccessful efforts were made by the WellTech crew under the direction of a "fisher" employed by Brown to retrieve—or fish—the pipe from the hole. As a result of the materials remaining in the hole, the well was lost and unrecoverable. Upon concluding that the well could not be saved, Brown authorized another company to drill a replacement well.

Brown's trial pleadings alleged damages resulting from the loss of Shell State No. 1 and the drilling of the replacement well on theories of negligence, breach of express and implied warranties, deceptive trade practices, and breach of an alleged agreement by WellTech to pay for "the cost and expense of recovering the hole as long as they stayed in the casing...." In addition to a general denial, WellTech asserted defenses of contributory negligence, unavoidable accident and "day work" allegations amounting to a kind of "respondent superior" relationship between Brown and WellTech's crew. In its counterclaim, WellTech alleged a sworn account for "goods and materials" sold and delivered to Brown while its crew was at the well site. Both parties sought their attorney's fees.

Testimony during the trial centered around what kind of contract was actually entered into by the parties. Brown contended that WellTech had contracted to complete the entire project, i.e., by drilling the well 700 feet deeper, while WellTech asserted that the parties had agreed on a "day work" contract whereby Brown paid WellTech at the daily rate and had the overall control of WellTech's rig, equipment and crew and as such, Brown should bear the risk and the loss that occurred. The jury, in answers to the questions submitted to it, found no negligence by either party, and further found that WellTech did not "fail to perform ... [the services it was retained to perform] ... in a good and workmanlike manner by failing to properly close the elevators," and that it did not "fail to perform such services in a good and workmanlike manner by continuing to use the elevators after they discovered the elevators would not always close properly." Brown did not plead a breach of contract theory on the overall agreement nor was there a request for a trial amendment or jury questions for breach of contract. WellTech did not request any questions on its sworn account. Neither party requested a question relating to the nature of the contract, i.e., whether WellTech had agreed to deliver a completed well or was working

on a strict day work basis only. Brown was refused a requested question with instructions relating to whether the WellTech crew was acting as employees of Brown and WellTech requested a question on its attorney's fees, which was refused.

In his four points of error, Brown avers that the trial court erred in entering a take nothing judgment against him and a judgment in favor of WellTech on its claim for the reasons that: (1) the evidence conclusively established that WellTech had agreed to deepen the well and had failed to do so without fault of either party and therefore, Brown was entitled to a judgment as a matter of law on WellTech's breach of contract; (2) since it was conclusively established that WellTech had failed to complete the well as required by the agreement, it was not entitled to recover on its sworn account; (3) WellTech had failed to request any jury questions on its sworn account and therefore, there was nothing in the verdict to support its recovery; and (4) the question tendered by Brown and refused by the court relating to whether WellTech's crew was acting as employees of Brown should have been given if there was a fact issue concerning Brown's right to recover for WellTech's breach. For its part, WellTech claims that the judgment is proper since Brown failed to request any jury questions on contract, and the evidence conclusively established its right to recover on the sworn account. In its sole cross-point, WellTech asserts that the court erred in failing to submit a question on its attorney's fees.

The parties to this appeal do not challenge the findings of the jury on either legal or factual sufficiency grounds. Since neither party requested an appropriate jury question relating to the nature of the contract, there is no finding on this subject. It is fundamental that failure to request a special issue or issues necessary to support an independent theory of recovery provides no basis for a favorable judgment on that theory and nothing for the appellate court to review unless that theory of recovery was conclusively proved by the evidence. Tex.R.Civ.P. 273 and 278 (the latter formerly a part of Rule 279). *Hunt Construction*

*Company v. Cavazos,* 689 S.W.2d 211, 212 (Tex.1985); *Akin v. Dahl,* 661 S.W.2d 911, 913 (Tex.1983); *Hearn v. Frazier,* 241 S.W.2d 171 (Tex.Civ.App.—Eastland 1951, no writ). There were no findings by the court in the judgment or elsewhere to support the judgment and the parties cannot rely on the provisions of Tex.R.Civ.P. 279 to supply any necessary implied findings. *Indust–Ri–Chem Laboratory, Inc. v. Par-Pak Company, Inc.,* 602 S.W.2d 282, 289 (Tex.Civ.App.—Dallas 1980, no writ). See 3 R. McDonald, Texas Civil Practice sec. 12.36.1, et seq. (rev. 1983).

Since both parties now claim that the evidence in the case conclusively established their respective positions, we must look at all of the evidence to determine whether either party did as a matter of law prove its position. An issue is conclusively established when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. *Triton Oil and Gas Corporation v. Marine Contractors and Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

■ During the trial, Brown called F.R. Mitchell, an employee of WellTech, as an adverse witness. He testified that he understood that "WellTech was retained by Brown to drill a well another 700 or 800 feet down in an existing hole." Mitchell and Ronald A. Britton, a petroleum engineer retained by WellTech, testified concerning three different types of contracts generally utilized in the oil well drilling business: turnkey, footage and day work. When the contract is on a "turnkey" basis, the driller bids, for a certain price to be paid by the operator, to deliver a completed well and "is solely responsible for the job, good, bad or indifferent, everything that happens on it." If the contract is on a "footage" basis, the driller furnishes the men and equipment and charges so much for each drilled foot. In a "day work" contract, the driller rents to the operator "the people and equipment at a set charge for every day."

Britton testified on cross-examination "that Mr. Frailey [a Brown employee]

called the WellTech people, and asked them to bid on this well. They put together a package. They asked what needed to be done." WellTech then submitted a verbal bid. Edward R. Burrows, the former Well-Tech salesman who made the agreement with Brown, testified on direct that "[t]he agreement was that we would furnish the rig for this *deepening job* (emphasis added) with Mr. Brown, and we would third party the extra equipment that the rig did not have on it." Burrows also testified with reference to equipment obtained from a third party that WellTech would make the necessary arrangements, that the third party would then bill WellTech and it would include the third party charges in its itemized bill to Brown. John McLain, Well-Tech's Senior Vice-President of Operations, was asked the question, "Then you all got a lump sum, or the agreement was that you would receive a lump sum for the *drilling job* (emphasis added) from Brown, and from your lump sum, you would pay Petco (the third party)?", to which he replied, "That's correct." He was then asked what was meant by the term "lump sum," to which he responded, "Lump sum means our rig rate was so much per hour, which would equate to so much per day. And we added to that price, or to that cost, the cost of the rental equipment."

Brown himself testified on cross that the contract, at least as to the part he knew about, "was an arrangement with WellTech to provide a rig and necessary equipment to drill that 700 feet." Although he acknowledged that the contract was day work "if I had to guess," he added, "The word, day work, is a very general term … there are day work contracts and there are day work contracts." Foy Boyd, an independent petroleum consultant called by Brown, testified that although the prices reflected in the WellTech invoices were reasonable, the bills should not be paid because WellTech did not perform the work it had contracted to do.

From the foregoing summary of evidence, it cannot be said that there is no room for ordinary or reasonable minds to differ as to the conclusion to be drawn therefrom. Brown contends that WellTech contracted to complete the 700 foot drilling job, whereas WellTech claims the evidence conclusively establishes that a day work contract was intended by the parties rather than a turnkey contract. There is more than a scintilla of evidence in support of each position. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). The fact that a day work contract in some form existed does not rule out the possibility that WellTech agreed to complete the job while at the same time agreeing to charge Brown so much per day and to have its crew and rig under the general direction and control of Brown's drilling consultant. If WellTech did agree to drill the well 700 feet deeper, then not having completed its performance in accordance with that agreement because of a loss of the well through no fault of Brown, it would not be entitled to recover on a sworn account (or a quantum meruit basis) for its partial performance. *Metrocon Construction Company, Inc. v. Gregory Construction Company, Inc.,* 663 S.W.2d 460, 462 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *T.G. Shaw Oil Corporation v. Parker,* 61 S.W.2d 587, 589 (Tex.Civ.App.—Fort Worth 1933, no writ); *Lonergan v. San Antonio Loan & Trust Co.,* 101 Tex. 63, 104 S.W. 1061 (Tex.1907); *Bastrop & Austin Bayou Rice Growers' Ass'n v. Cochran,* 138 S.W. 1188 (Tex.Civ.App.—Galveston 1911, no writ). See also *Weis v. Devlin,* 3 S.W. 726 (Tex.1887); *Bartlett v. Bisbey,* 66 S.W. 70 (Tex.Civ.App. [1st Dist.] 1901, writ ref'd.).

An issue of fact was raised by the testimony and should have been submitted to the jury. Since both parties to this lawsuit were seeking affirmative relief on conflicting theories, either or both should have requested that an appropriate question be submitted to the jury on the disputed nature of the contract. Failure to request an appropriate jury question waives the ground of recovery not conclusively established under the evidence. Tex.R.Civ.P. 279; *Hunt Construction Company v. Cavazos,* 689 S.W.2d 211 (Tex.1985). Brown's Points of Error Nos. One and Two are overruled and his Point of Error No. Three is sustained.

■ We now consider Brown's fourth point of error that the trial court erred by

refusing to submit a jury question tendered by him:

> On the occasion in question, were Jamison and his crew [WellTech's employees] acting as employees of H.L. Brown, Jr.? [Definitions of "employee" and "independent contractor" followed.]

A finding either way would not have ruled out the possibility that WellTech was obligated to complete the 700 foot extension to the well, as contended by Brown, or that WellTech could have pulled its crew and equipment off the well site at any time for any reason and still would have been entitled to recover its daily contract price up to that time, a logical extension to Well-Tech's position. Thus, we agree with Well-Tech's argument that the requested question would not have been controlling on the contract issue but is evidentiary in nature, contrary to the requirement of Tex.R.Civ.P. 277, in effect at time of trial. Brown's fourth point of error is overruled.

Having previously reached the conclusion that WellTech did not conclusively prove its sworn account theory and therefore, is not entitled to judgment, it would not be entitled to recover its attorney's fees. Tex.Civ. Prac. & Rem.Code Ann. sec. 38.001 (Vernon 1986). For that reason, it is unnecessary to consider WellTech's cross-point of error.

We reverse and render.