TEXAS FIDELITY & BONDING CO. et al. v. ELLIOTT et al. (No. 5804.)

(Court of Civil Appeals of Texas. San Antonio. April 25, 1917. Rehearing Denied May 23, 1917.)

1. APPEAL AND ERROR ⊚⟲230 — OBJECTIONS BELOW.

Judgment against a bonding company could not be assailed on appeal because the company had been dissolved and its charter forfeited nearly a year after suit was instituted, where

neither in its answer nor during the trial did the company disclose such fact, and did not mention it until motion for new trial was filed, although one of the liquidating trustees of the corporation was attorney for the bonding company.

2. PRINCIPAL AND SURETY ⟨⟩7—BOND FOR BUILDING CONTRACT — OWNERSHIP BY OBLIGEE OF PROPERTY.

A bonding company's bond to secure the execution of a building contract was not vitiated by the fact that obligee had only the legal title to the premises, and the equitable title was in another.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 8–12, 14, 16, 18.]

3. PRINCIPAL AND SURETY ⟨⟩82(2) — BUILDING CONTRACT BOND—DAMAGES FOR DELAY.

A building contract bond that the contractors will "well and truly perform the covenants," etc., of the contract, the surety assuming liability for any and all damages naturally and directly resulting from failure to do the work in the time specified, renders the bonding company liable for damages from delay by the contractor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 127.]

4. MECHANICS' LIENS ⟨⟩115(4) — MATERIALMAN'S LIEN.

Under Rev. St. 1911, art. 5623, as to materialman's lien, when notice is given to the owner or his agent of the fact that material has been furnished a contractor, subcontractor, agent, or receiver, a lien is fixed on the property to the extent of the sum afterwards paid under the original contract; the statute fixing a lien for the materialman, on his compliance with it, on the property of the owner to the extent of the amount due by the owner to the contractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 157–159.]

5. MECHANICS' LIENS ⟨⟩115(4) — MATERIALMAN'S LIEN.

The lien of materialmen under Rev. St. 1911, art. 5623, as to such lien, upon the contract money paid to the contractor after notice of such lien, is not affected by the fact that the money so paid to the contractor was used by it to pay current weekly pay rolls of workmen, necessary to be paid to avoid stoppage of the work, since similar necessity is incident to all building construction.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 157–159.]

6. MECHANICS' LIENS ⟨⟩196 — WHO MAY CLAIM LIEN.

The equitable owner of property, who has transferred the legal title to another merely for the purpose of building, cannot, on furnishing material for such building, claim a lien therefor as against real lienholders.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 337–341.]

Error from District Court, Bexar County; R. B. Minor, Judge.

Suit by H. D. Elliott against the Texas Fidelity & Bonding Company and others. From a judgment, the named defendant and others bring error. Affirmed.

Hertzberg, Barrett & Kercheville, of San Antonio, for plaintiffs in error. Arnold, Cozby & Peyton, C. A. Keller, W. S. Anthony, T. H. Ridgeway, and Jno. P. Pfeiffer, all of San Antonio, for defendants in error.

FLY, C. J. This suit was instituted by H. D. Elliott against the Texas Fidelity & Bonding Company, the San Antonio Sand Company, the Tips Hardware Company, George T. Jambers, the San Antonio Portland Cement Company, the Alamo Iron Works, Decatur Bridge Company, Hillyer-Deutsch-Jarratt Company, Gordon-Jones Construction Company, H. M. Abernathy, trustee for the last-named company, bankrupt, and David M. Picton & Co., to recover against the construction company, the trustee in bankruptcy, and the bonding company the sum of $12,750.98, with 6 per cent. interest from December 8, 1913, and to adjudicate the rights of the other defendants who were claiming materialmen's liens on a house constructed by the construction company for Elliott. The bonding company had given bond for $10,000 to secure the faithful erection of the building. Each one of the parties, who were defendants below, except the construction and bonding companies, who answered, claimed liens for material furnished for the construction of the building. The San Antonio Sand Company, Tips Hardware Company, George T. Jambers, Gordon-Jones Construction Company, and H. M. Abernathy, trustee, did not answer. Charles Baumberger, Sr., Charles Baumberger, Jr., Albert Kronkosky, and Fred W. Cook, who were made parties by the bonding company, appeared and answered. The cause was submitted to a jury on special issues, and upon the answers returned thereto judgment was rendered in favor of H. D. Elliott for $10,000 as against the bonding company, against the construction company and its trustees for $15,446.34; in favor of the Alamo Iron Works, Hillyer-Deutsch-Jarratt Company, Decatur Bridge Company, and David M. Picton & Co. for the amounts claimed by them, and for foreclosure of their liens on certain property described therein; that the cement company recover nothing; and that the other parties go hence without day. The parties who foreclosed liens and the bonding company were also given judgment against the construction company and its trustee for the respective amounts claimed by them. The bonding company, the cement company, and H. D. Elliott prosecuted writs of error to this court.

The evidence shows that the cement company desired to build a house and, being desirous of avoiding offense to builders and contractors, conceived the novel idea of conveying the property to H. D. Elliott and entering into a contract with said Elliott that the cement company should furnish the money to construct the house and when completed the property should be conveyed back to the cement company. The contract for the construction of the building was made by and between Elliott and the construction company. The bond made by the bonding company was to indemnify Elliott for the

failure of the construction company to complete the building according to the terms of its contract. It breached its contract, and Elliott was damaged in the sums decreed by the judgment. The liens given preference by the judgment to the four parties claiming the same were fixed by notice on a fund of $3,135, which was in the hands of Elliott when the notices were given and was afterwards paid out by Elliott to the construction company.

[1] Through the first assignment of error, the bonding company assails the judgment of the trial court because the bonding company had been dissolved and its charter forfeited by the state of Texas, nearly a year after this suit was instituted. The bonding company, neither in its answer nor during the trial, disclosed the fact of the forfeiture of its charter. No evidence was offered to that effect, and the matter was never mentioned until the motion for new trial was filed. One of the liquidating trustees of the corporation was an attorney for the bonding company. It is a statutory requirement that an answer setting up certain matters, among the number "that the plaintiff or defendant, alleged in the petition to be duly incorporated, is not duly incorporated as alleged," shall be verified by affidavit. It has been held by this court that, where it is alleged that a party is duly incorporated, it will be taken as true in the absence of a denial under oath of the opposing party. Steely v. Texas Improvement Co., 55 Tex. Civ. App. 463, 119 S. W. 319. The first assignment is overruled.

[2] The legal title to the land on which the house was erected was in H. D. Elliott, whatever secret understandings there may have been between him and his vendor, the cement company; and contracts made by him as to buildings on the land, or as to bonds to secure the execution of the building contracts, would be binding upon all the parties. The proposition of the bonding company is:

"If Elliott was not the owner of the property upon which the improvements were erected, the bond given to him, as owner, by the contractor and surety company, would be vitiated."

No reason is given to support the proposition, and no authority is cited that sustains it. The bond does not mention the question of ownership and makes no provision for its failure if the full ownership of the land was not in Elliott. No attempt is made to show that the matter of ownership could have, in any way, inured to the benefit, or caused the injury, of the bonding company. The condition was, as contended by the bonding company, to indemnify Elliott, and that was one of the objects of the suit. It is no concern or business of the bonding company as to what Elliott may do with the money when he gets it. The construction company has breached its contract; the bonding company has bound itself to make good the contract in the sum of $10,000, and cannot evade that obligation by proof that another corporation owns the equitable title to land to which its obligee has a legal title. Again, there is not one iota of evidence which tends to show that the charter of the bonding company had been forfeited. It is not pretended that falsehood, fraud, or false pretenses were used to induce the bonding company to furnish the bond. There is nothing in the record that tends to show that the bonding company would have preferred to have given a bond to Elliott, rather than the cement company, or that it would have been in any better shape or condition if Elliott owned, or did not own, the land. The fact remains that default was made, and that it had promised to remedy it. Shortly after the bond was given, the bonding company discovered the condition of the title, and yet no objection was raised until after this cause had been tried and judgment rendered against it.

The Iowa case of Getchell v. Peterson, 124 Iowa, 599, 100 N. W. 550, cited by the bonding company, is authority for propositions of law directly opposed to those proposed by the bonding company. The contention in that case was that the bond given for the faithful execution of a contractor's contract had no binding force because false representations had been made as to the ownership of the premises, and the court held:

"True, it appears that the legal title to the lot upon which the house stands is in W. V. McQuaid, and not in H. W. McQuaid. No representation as to the title is shown to have been made, except as the same may be inferred from the fact that the contract and bond speak of H. W. McQuaid as the 'owner' of the premises. The term 'owner' is one of quite general application, and is frequently applied to one having an interest in or claim upon property much less than absolute and unqualified title. * * * Ownership may be qualified or unqualified, legal or equitable, and from the mere fact that the legal title of this lot is not in H. W. McQuaid it does not follow that he is not the owner of a title which is good against the world. There is no pretense that he is not the owner of the building, or that he is a trespasser upon the land. Presumably he is rightfully in possession, and for the purposes of the contract and of all parties thereto he is the owner."

[3] In this connection, it may be stated that the contention, made through the sixth assignment of error, that the bonding company was not liable for the damages of $20 a day arising from delay on the part of the contractor, is fully answered in the Iowa case cited by the bonding company. In that case it was held:

"It is said the bond only indemnifies McQuaid against damages sustained on account of the negligence of the contractors. Even if this be so, is not negligence of the contractors the gist of the owner's complaint that the building was not completed until long after the time agreed upon? But the bond is not subject to any narrow interpretation in this respect. The undertaking is general that Peterson & Sampson will 'well and truly perform the covenants and stipulations' in the contract, and the surety clearly assumed liability for any and all damages naturally and directly resulting to the obligee from

the failure of the contractors to do the work in the manner and within the time specified."

The undertaking of the surety in this case was similar to those named in the Iowa case. The evidence sustained the finding as to the damages for delay.

The judgment against the bonding company was for $10,000, the amount for which the bond was given, and it is unnecessary to consider the question whether the obligee could recover damages for delay for the time after he took charge of the work of completing the building, because there was, under the testimony, a delay of 108 days before the work was taken in charge by the owner, which amounted at $20 a day, found by the jury to have been the actual damages sustained, to the sum of $2,160. If that amount be added to the loss of $7,850.98 sustained by Elliott on account of the increased cost of the building, the aggregate sum would be $10,010.98, which is within the amount of the bond.

The bonding company has no right to concern itself with the disposition that Elliott makes of the damages recovered by him. It is probable that the cement company will be able to adjust matters between itself and Elliott, and, if it fails in that undertaking, it is not a matter about which the bonding company should seek to interfere. If Elliott was merely an agent of the cement company, which the facts seem to indicate, he had been intrusted with the legal title to the land and the responsibility of having improvements constructed on it, and it should not be a matter of solicitude to the bonding company as to secret contracts between the parties or as to whether they can adjust their affairs equitably and justly. The contractor and the bonding company may not have known that there was a private contract as to penalties on account of delays between Elliott and the cement company, but both knew of the provision for penalties for delay in the contract between the construction company and Elliott, and that was sufficient.

The third assignment of error is followed by neither proposition nor statement. However, the matters sought to be raised by the assignment are fully discussed under the second assignment.

There is no inconsistency in holding that Elliott, the holder of the legal title, could sue for and recover damages arising from a breach of the construction contract, and that the equitable owner of the land and building could not foreclose a lien on its own property to the detriment of other lienholders. Elliott as holder of the legal title had the right to contract for the construction of the house, but the equitable owner had no right to fix a lien on its own property.

There was no error in submitting the issue as to whether the contractor ordered the structural steel without delay. It was provided in the contract that the improvements should be ready for occupancy in 120 working days from date of the contract, but there was a proviso that:

"If the contractor shall order the structural steel without delay, and the structural steel is not delivered within 60 working days from date hereof, then the time of the completion shall be extended for as many working days as the delivery of said structural steel shall be delayed beyond sixty working days from date hereof."

It is clear that the extension of time was given as a premium for promptness and dispatch in ordering the steel and that the extension was dependent on such promptness. It therefore was material, in settling the issue of delay, to ascertain if the contractor had promptly ordered the structural steel. The evidence sustained the finding of the jury that there had been unreasonable delay in ordering the structural steel, and the provisional extension of time became null and void. In pleading delay, Elliott raised the issue submitted to the jury. The evidence justified it, and the jury found that actual damages resulted from the delay in constructing the improvements.

Admitting that the question as to whether Elliott, when he took charge of the work, expeditiously finished it, was irrelevant and immaterial, its submission could not in any manner have injured the bonding company, and it does not claim any injury from it. The eighth assignment is overruled.

The item of $3,135 which was in the hands of Elliott at the time of notice of the existence of the liens, and for which he was held liable, did not increase the liability of the bonding company; for, subtracting the amount for 108 days' delay and the $3,135 from the damages found in favor of Elliott, the $10,000 remain to cover the balance of the damages. The bonding company lost nothing by the payment of the $3,135 to the construction company. The issues as to the purposes for which the $3,135 were used did not affect the liability of the bonding company, and it has no ground of complaint. The money was paid out for the benefit of the construction company.

The eleventh assignment of error has been disposed of by the consideration of other assignments involving the same subject, and it will be overruled. This disposes of the brief of the bonding company.

[4] We conclude that there was no error in rendering judgment in favor of the four lienholders against Elliott for the several sums due them for material furnished to the contractors and in foreclosing their liens on the property. When the statutory notices were served on Elliott, he had in his hands, of the contract price for the construction of the improvements, the sum of $3,135, which he afterwards expended. It does not matter for what it was expended, nor what good may have been accomplished by its expenditure. The statute is positive that when the notice is given to the owner or his agent of the fact that material has been furnished a

contractor, subcontractor, agent, or receiver, a lien is fixed on the property to the extent of the sum afterwards paid under the original contract. Rev. Stats. art. 5623; Padgitt v. Construction Co., 92 Tex. 626, 50 S. W. 1010; Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112. Whatever may be the rule in New York, or other states, our statute fixes a lien for the materialman, when he complies with the statute, on the property of the owner to the extent of the amount due by the owner to the contractor. Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500; Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803. As said in the first case cited:

"From the time of the service of the notice upon the owner of the property he can make no further payment to the contractor without incurring liability for the lien debt, if proper steps shall be taken to establish it, to the extent of his indebtedness under the contract when the notice is served."

In the Lonergan Case it was said:

"The owner of the property is liable to the materialman only as he (the owner) would be liable to the contractor."

Elliott had agreed to pay the contractor a certain sum for the erection of the improvements, and out of that sum there remained in his hands the sum of $3,135 which was appropriated by the statutory notice given by the materialmen. Elliott had no authority to pay the money to the contractor for any purpose. Wilkerson v. McMurry, 167 S. W. 275; Seeling v. Alamo Iron Works, 173 S. W. 520. The money paid on the contract after the notice was money subject to the liens of materialmen.

The facts show that, after the notices were served on Elliott, he paid to the construction company, as he had done before, on the vouchers of the architect, the sum of $3,135. The payments were made under the original contract, and Elliott did not pay the laborers and materialmen after the notices any more than he did before. In fact, he never did pay for any labor or material until after he had set aside the contract and had begun to finish the improvements for himself. Not until the contract was abrogated, quite a while after the notices were given, did he bring himself within the purview of the case of Fall v. Nichols, 43 Tex. Civ. App. 582, 97 S. W. 145, so confidently relied on by Elliott. That case has no bearing on this, as to the time when the $3,135 was expended.

[5] Elliott, in his brief, many times refers to findings of the jury that the money paid to the construction company was used to pay current weekly pay rolls of workmen, and that it was necessary to pay these, and that if they had not been paid the work would have stopped, but fails to point out any testimony that sustains the answers. The statement of facts shows that the construction company was paid upon vouchers by the architect, after March 10, 1914, when the notices were given, just as it had been paid before that time, and Elliott knew no more how the money was used after the notices were given than he knew before they were given. If liens were not fixed by the notices of March 10, 1914, then there never was a time from the inception of the contract when they could have been fixed. The $3,135 paid to the construction company after the date named was not expended by Elliott to workmen, laborers, and materialmen, with whom he had contracted, but was paid out as stated in the vouchers for "90 per cent. of labor and material furnished in the construction of Pocahontas Milling Company stock house to date by said contractors and the above payment is in accordance with the contract requirements." It may be, as contended by Elliott, that it was absolutely necessary for the vouchers to be paid in order that the construction should proceed; but that is the usual condition of affairs under all building contracts. The owner had not declared the contract breached, and had not assumed management of affairs during the time that the $3,135 was being expended. He afterwards did take charge of the construction, but not until the $3,135 had been expended.

If the propositions contended for by Elliott were the law, the liens given materialmen and laborers would be a snare and delusion; for, if a lien cannot be fixed where it is necessary to pay the contractor to carry on the work under his original contract, then the circumstances would never arise when liens would attach. The effect of such a ruling would be that materialmen, who furnished material after the notices were given by those who had furnished material before that time, would secure their money without any effort to fix liens and those who had complied with the law would go unpaid. Materialmen are compelled to take the chance of the contractor becoming unable to fulfill his contract and having it forfeited and the building taken over by the owner, but do not take the chance of having their liens, fixed according to law, set aside by a claim that money afterward paid to the contractor was done in order that he might fulfill his contract. No case has been cited, nor do we think can be found, that sustains any such proposition as that advanced by Elliott.

The case strongly relied on by Elliott is Rodbourn v. Grape & Wine Co., 67 N. Y. 217, but that case sustains no such proposition as that set out in Elliott's brief. The New York court merely held, as do all the cases cited by Elliott, that an owner could not be held for liens attempted to be fixed on his property after he has been compelled to take charge of and complete a building which the contractor had failed to finish. The $3,135 was expended by Elliott after no-

tice was given and before he took charge of the construction, and none of it was expended for material bought or labor secured by Elliott, but it was expended by the contractor under his contract just as it had been expended since the construction of the building was begun.

None of the cases cited by Elliott has gone further than to hold that, where a building contract has been breached by the contractor and the owner is compelled in good faith to complete the improvements or enter into a new contract to have the same completed, the owner cannot be held liable for any sum judiciously expended after such breach, unless there should remain something of the original contract price after the completion of the building. If all liens can be defeated by the fact that long after they are fixed the contractor fails, and the owner is compelled to complete his building at a greater cost than originally contemplated, liens for material amount to little or nothing. If the Gordon-Jones Construction Company was insolvent and unable to complete the contract when the notices were given, the owner should have declared the contract abrogated and have taken charge of the work. He should not have continued paying money to the contractor as he had done before the notices were served, giving no heed whatever to such notices.

[6] There is no merit in the contention of the San Antonio Portland Cement Company, the equitable owner of the land and improvements, that it should have a lien for materials furnished to build its own house. It had contracted to furnish the materials and have the property reconveyed to it, and it would be a novel procedure for it to be allowed to obtain a lien on its own property, and thus prevent the real lienholders from collecting their debts. The transaction between Elliott and the cement company was had to screen and protect the latter from the disaffection and animosity of contractors who might fail to secure the acceptance of their bids for the erection of the improvements, and, while it placed the legal title in Elliott and gave him the right to contract about the improvements, it did not take the real title to the property out of the cement company. Its contentions as to the right to secure a lien are overruled.

The judgment is affirmed.