**GAY et al. v. ACME BRICK CO.** (No. 8157.)

Court of Civil Appeals of Texas. San Antonio.
Feb. 20, 1929.

Rehearings Denied April 3, 1929.

Albert B. Hall, of Dallas, and Seabury, George & Taylor, of Brownsville, for appellants.

Graham & Graham and Wells & Richards, all of Brownsville, and Thomas G. Patteson, of Cooper, for appellee.

FLY, C. J. This suit was instituted by John F. Grant against Mrs. Mary V. Gay and R. H. Milton to recover $2,877.40, alleging that said Milton, acting under the name of Milton Construction Company, had purchased lumber and other building material to be used by said construction company in the erection of a residence in Brownsville for Mrs. Mary V. Gay; said material being furnished with the knowledge and consent of said Mrs. Gay. Said Grant prayed for a judgment

against R. H. Milton for his debt and for a foreclosure of any lien he might have on the premises of Mrs. Gay. Afterwards the Acme Brick Company filed a suit against Mrs. Mary V. Gay, R. H. Milton, and Fidelity & Deposit Company of Maryland to recover the sum of $527.02 due for brick used in erecting the residence for Mrs. Gay. The bonding company was a surety on a bond given by Milton for the faithful performance of his contract. The two cases were consolidated. The court rendered judgment in favor of John F. Grant and the Acme Brick Company against Mrs. Mary V. Gay, for the respective amounts sued for by them, and a foreclosure of a lien on the premises of Mrs. Gay, and rendered judgment in her favor over against the Fidelity & Deposit Company of Maryland for the amount of the judgment against her. Mrs. Gay and the Fidelity & Deposit Company perfected this appeal, and they as well as the Acme Brick Company have filed assignments of error and briefs in this court.

In the consolidation of the suits it was agreed between the parties:

"1. That on November 19, 1926, defendant R. H. Milton who under the trade-name or assumed name of Milton Construction Company had, as contractor, entered into a contract with Mrs. Mary V. Gay, of defendants, as owner, pleaded in the petitions of Acme Brick Company and John F. Grant, plaintiffs, after commencing the construction of the building and structures herein provided for and without completing the same, abandoned the work and his said contract and left the city of Brownsville for parts unknown; and that prior to said date defendant Mrs. Mary V. Gay had regularly and in accordance with said contract paid to this contractor $7,030.15, on the contract price of the said buildings and structures, and upon estimates issued by the architect in accordance with said contract, and that said payments were made before said defendant received any notices of the claims of any of the other parties to this suit.

"2. That thereafter at various dates between November 20, 1926, and June 6, 1927, defendant Mrs. Mary V. Gay expended the further sum of $9,254.70 in payment for labor and material that went into the buildings and structures provided for in said contract subsequently to November 19, 1926; that the labor and material so paid were necessary in order to complete said buildings and structures in accordance with the plans and specifications of said contract; and that the amount so expended did not exceed the market value of such labor and material.

"3. That there now remains in the hands of defendant Mrs. Mary V. Gay on account of the contract price, including extras, the sum of $99.15, which has not been paid out or expended by her for either of the purposes hereinbefore stated."

The facts show that Mrs. Gay had entered into a contract with R. H. Milton, under the trade-name of Milton Construction Company, on August 19, 1926, by the terms of which the contractor or builder bound himself to furnish all the materials and labor necessary to erect a residence for Mrs. Gay, in the city of Brownsville, and complete the same by November 23, 1926; the amount to be paid for the building being $15,844. The contractor gave a bond to Mrs. Gay in the sum of $8,000, the condition being that "the principal shall indemnify the owner against any and all loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract." It is also provided in the contract that if Milton, the contractor, "shall abandon said contract or be lawfully compelled by reason of a default to cease operations thereunder, the surety shall have the right at its option to complete said contract or to sublet the completion thereof." Milton abandoned the contract before it was completed. The claims of the two plaintiffs were duly proved and shown to be for material furnished for building Mrs. Gay's residence to the contractor before he abandoned the contract. Said sums have not been paid, and statutory notice of the claims were given to the owner on November 30, 1926, and December 10, 1926. After the contractor abandoned the work, it was completed with funds furnished by Mrs. Gay, which were paid mostly through W. W. Deen, who claimed to be acting as the agent of the Fidelity & Deposit Company, the surety on the bond given by Milton to Mrs. Gay, and, while the evidence was conflicting, there was sufficient to show that Deen acted for the surety. John Gay, acting for Mrs. Gay, and Deen, claiming to act for the surety, finished the building; Mrs. Gay paying the bills by giving checks to Deen, agent, or at times directly to the person furnishing labor or material. All estimates made were paid at the time Milton abandoned the contract, and she owed him nothing at that time. Notice of the claims for material were not given by the Acme Brick Company and John F. Grant until after Milton had abandoned his contract.

■ It is contended by Mrs. Gay, through her first and second propositions, that, having paid Milton all sums owed by her to him at the time of his abandonment of the contract, and the notices of the materialmen having been given her after such payment and abandonment, no lien for materials was fixed by the materialmen on her premises. It was shown that all statutory acts were performed by the materialmen to fix a lien on Mrs. Gay's property, and that the lien was fixed for the materials, unless the abandonment by Milton and full payment of all sums due him, before the notices were given, prevented the lien from attaching. Under the provisions of article 5463, Rev. Stats., Mrs. Gay would not have been liable for the amounts claimed

by materialmen of which she received notice after she had paid all sums due the contractor up to the time he abandoned the work, if those payments had constituted all she owed on the building; but she had not paid one-half of the contract price at the time Milton breached his contract. Mrs. Gay had a bond given by Milton with the Fidelity & Deposit Company as surety and she continued to pay on the contract when the surety had assumed completion of the contract under the terms of the bond. Mrs. Gay was in the same position towards the contract after the abandonment by Milton as before, when the surety company assumed the completion of the contract and she recognized it and paid out thousands of dollars to its agent. The amounts paid to Deen, as agent for the surety, were to all intents and purposes payments to the contractor, for the surety had stepped into his place and assumed the responsibilities and liabilities of its principal. A lien was fixed by the materialmen before Mrs. Gay had paid the contract price; that material had been used in the construction of her building and she was liable primarily to the materialmen, and the surety company was liable to her for the damages accruing from a failure of the contractor to pay off and discharge the accounts for material that went into the construction of the building. If Mrs. Gay had assumed control of the building after Milton left, and had not recognized the right of any one representing Milton to complete the contract she would not have been liable for amounts due for materials of which she had no notice when she settled with the contractor. But she did not assume control, but recognized the agency of Deen, acting for the surety on the contractor's bond, and consequently was affected by the notices of the materialmen. She should have retained the sums due by the contractor for the material out of the sums she was paying one standing in the place of the contractor. Her son acted for her, and Deen was not her agent. For whom was Deen acting? The facts indicate strongly that he was acting for the Fidelity & Deposit Company.

▮ The liability of Mrs. Gay depends upon the terms of her contract. The lien established by the material or labor men seizes upon and appropriates any money in the hands of the owner that is due or that may become due and payable to the contractor. From the time the notices of claims for labor or material are served on the owner he can make no further payments to the contractor, or any one substituted for him under the contract, without incurring liability for the lien debt. Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500; Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876. We place the liability of Mrs. Gay to appellees upon the ground that Fidelity & Deposit Company was representing Milton under the terms of the bond, and Mrs.

Gay had the power to protect herself against the claims for materials by retaining the amounts that became due to the surety just as she could have done if the contractor had still been at work.

▮ Deen was either the agent, as claimed by him, for the surety company, or was an officious volunteer assuming to carry out and complete a contract in which he had no conceivable interest. It is inconceivable that he assumed the authority to complete Mrs. Gay's residence without authority from the surety company. Moore, who had authority to execute bonds and represent the company in other particulars, gave Deen authority to complete the contract. Deen had no contract with Mrs. Gay, was not representing her, and his connection with the completion of the building can be accounted for in no reasonable way except upon the assumption that he was representing the only other party, except the owner, who had any right or authority to carry out the terms of the contract. Deen assumed to act for the surety under the terms of the bond executed to indemnify Mrs. Gay, and it would be an utter absurdity to conclude that without rhyme or reason, or the hope of fee or reward, he assumed the responsibility of completing the building and did complete it. Deen swore that he informed Moore, the assistant manager, of the breach of the contract by Milton, and he (Deen) was authorized by Moore to obtain a contractor and finish the job. He advised with Moore from time to time, and kept him informed as to the progress of the work. Deen had acted for the surety company at other times, in connection with other business. Another general agent of the surety company, one Deady, knew all about what Deen was doing and acquiesced in it, and did not repudiate his work until the house was completed and this suit instituted. Authority of the branch managers of the company, such as Deady and Moore, to act for the company, was shown by competent testimony. The surety company has a branch office in Dallas, the only agency by which it can be reached in Texas, and the only agency through which it can be compelled to perform its contracts in Texas. That branch agency had full knowledge of the fact that Deen was representing it, under the terms of its bond, in the completion of a contract which Milton, its principal, had failed to complete. John Gay notified the home office in Baltimore that the local agent had been instructed to carry out the contract and that a man out of the company's office would be in Brownsville to take charge of the work, and there was no denial that such agent was there to take charge, and no such denial was made until this suit was filed in 1928. The assistant managers and managers were conspicuous by their absence when testimony denying Deen's agency was proper in the district court; the only witness put forward to deny his authority was a lawyer.

It seems to be a great corporation acting

in Texas, without agents and without admitted responsibility. The Texas branch of the surety company was a fruitless branch of the Baltimore tree, without power to give vitality to anything connected with the business except to sign bonds. The trial judge failed and refused to entertain such an unreasonable proposition. The owner after the breach of the contract had the right to complete the erection of the building, but did not exercise that right, but allowed the surety company to exercise its right under the provisions of the bond. Deen did not claim to be the agent of Mrs. Gay, nor did she make such claim. John Gay was acting for her, and when Deen used the term "we" and said Hanson was overseeing the work "for us," he meant the Fidelity & Deposit Company and not Mrs. Gay. Mrs. Gay paid the bills just as she did while the contractor was at work, but had no management or control of the work. There was no more contractual relation between her and the laborers and materialmen after Milton left than before. She paid the bills presented to her, without exercising any supervision of the work at any time. Deen was acting in place of the contractor as agent of the surety company.

The completion of the contract and the fixing of the liability of the owner for materials furnished by appellees did not "in any manner affect the contract between the owner and original contractor as to the amount, manner, or time of payment of said contract price." Mrs. Gay could and should have held the amount for which the liens had been fixed and not allowed it to pass into the hands of the surety company, which had taken the place and assumed the responsibilities of the defaulting contractor. Articles 5454, 5463, and 5468, Rev. Stats.

The argument that Deen, as agent for the surety, did not pay the money of the company for the labor and material put on the building by him has no force. Neither did the original contractor, and Deen acted exactly as did the contractor; he paid for labor and material with Mrs. Gay's money. The case of First Baptist Church v. Carlton Lumber Co. (Tex. Civ. App.) 173 S. W. 1179, is not in point. In that case, when the contractor abandoned his job, another contract was made with the surety to finish the work. In this case no new contract was made, but the old contract remained untouched, and the surety, under the terms of the bond, proceeded to complete the original contract. In the cited case it was said that after the abandonment of the contract by the original contractor "the church committee, accepting the breach, and acting independently of the contract, made a distinct contract reletting the work to the appellant insurance company for a stated and fixed price." In the present case the old contract was not repudiated by Mrs. Gay and no new contract entered into by her, but the old contract was completed by the surety under the terms of its bond to Mrs. Gay.

The case of Texas Fidelity & Bonding Co. v. Elliott, 195 S. W. 301, decided by this court, sustains the claims of the appellees. It held, as we now hold, that: "Where a building contract has been breached by the contractor and the owner is compelled in good faith to complete the improvements or enter into a new contract to have the same completed, the owner cannot be held liable for any sum judiciously expended after such breach, unless there should remain something of the original contract price after the completion of the building." We reiterate that Mrs. Gay did not complete the improvements herself, or make a new contract for the completion, but merely recognized the right of the surety company to take the place and assume the responsibilities of the defaulting contractor and continued to pay to his representative under the terms of the original contract. If, as stated in the Elliott Case, the improvements could not be completed under the original contract, "the owner should have declared the contract abrogated and have taken charge of the work." It was never abrogated, but proceeded under to the completion of the building.

The contractor was not a necessary party to this suit. American Surety Co. v. Austin (Tex. Civ. App.) 5 S.W.(2d) 626. But he was sued, and, as his residence was unknown, he was cited by publication. Of course no personal judgment could be taken against him under the circumstances, and the surety company has no cause for complaint because this was not done. If surety companies could escape liability and receive immunity by taking advantage of the default of a fugitive principal their bond would be useless.

Not only do the facts show that Deen was lawfully acting for the surety company, with their full knowledge and consent, but that they were fully notified by him and by Hanson and John Gay of the steps taken by him. They repudiated none of his acts. When John Gay wrote the home office at Baltimore about the failure of Milton to complete the contract and informed them, "Your local agent has instructed the owner to carry on with the work and that an agent out of your office will be here to take charge," they answered, but did not state that they had no agent in Brownsville, nor that they would not take charge of the work. It was stated that they had not heard of the contractor's default, but whether that be true or not they advised the owner to withhold payment of any sums until they had an opportunity to investigate. The result was they took charge under the terms of the contract. With full knowledge of the facts there was no repudiation of the agency until this suit was instituted and they sought to evade their responsibility under the bond. The branch office in Dallas knew all the facts and ratified

the acts of Deen. That branch department had the authority to bind the company. Manhattan Life Ins. Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099.

We conclude that the judgment should be and it is hereby affirmed.