W. O. HENDERSON et al., Appellants,

v.

Otto COUCH et al., Appellees.

No. 3132.

Court of Civil Appeals of Texas.

Eastland.

Jan. 14, 1955.

Rehearing Denied Feb. 11, 1955.

Dell & Perry Barber, Frank Ginzel, Colorado City, Reagan H. Legg, Midland, for appellants.

Rodgers & Adams, Big Spring, Clarence E. McGaw, Snyder, for appellees.

GRISSOM, Chief Justice.

Otto Couch, Ross Hill and H. M. Jarratt, as trustees for the Baptist Temple Church of Big Spring, sued W. O. Henderson and others who claimed liens against the church lots and building. Plaintiffs alleged that as such trustees they held the title to said lots and building; that on July 17, 1952, they entered into an agreement with Baker Willis to construct a church building on said lots under the terms contained in a written cost plus fee contract which provided that plaintiffs were to furnish the lots and Willis was to obtain the material and labor and build a church according to certain plans and specifications, as an independent contractor, for the cost thereof plus a fee of $9,000.00; that after the work started a supplemental agreement was made which changed some of the plans and provided that Willis should construct said building under the terms of a fixed cost contract and that said agreement provided that Willis should obtain the material and labor, pay therefor and construct the building according to plans and specifications for $129,300. They alleged that copies of said contracts were attached to a prior petition and that they were made a part of the present petition as if copied therein. The trustees alleged Willis undertook construction of said building and had almost finished it on February 10, 1953, when he abandoned the contract; that plaintiffs made payments as the work progressed until a total of $118,504.15 had been paid Willis; that, in addition thereto, Willis, in September, 1952, transferred and assigned to a bank his originally agreed fee of $9,000, which assignment was agreed to by the trustees, and Willis received $9,000 of a $50,000 loan made to the church by the bank and the church became liable and bound to pay said sum to said bank and the church thereby made a total payment to Willis of $127,504.15. A copy of said assignment and agreement by the trustees was attached to the petition. Plaintiffs alleged there remained a balance of $1,795.85 which plaintiffs would have been required to pay Willis if he had paid the materialmen and laborers, as he had agreed to do, and had completed the building according to the contract; that Willis failed to complete the building and abandoned the project and plaintiffs were required to spend $750 more to complete the building according to contract. Plaintiffs paid the remainder of the contract price, $1,045.85, into the registry of the court for disbursement to the defendant laborers and materialmen. Plaintiffs alleged that certain defendants, including appellants, had filed affidavits for liens against the church, the first of which was filed in April, 1953; that they were asserting claims to the money paid into court and plaintiffs could not pay them without the protection of a court order and plaintiffs asked the court to determine the defendants entitled thereto. Plaintiffs alleged that the defendants who had filed affidavits for liens had wrongfully clouded their title; that prior to receipt by plaintiffs of written notice from any of the defendants and before any of them filed affidavits attempting to fix liens plaintiffs had paid out to Willis, as an independent contractor, $127,504.15 of the contract price of $129,300 and that plaintiffs made no payments to Willis after receipt of any of such written notices or the filing of any affidavits. The trustees swore to the petition and attached thereto the affidavit of the church treasurer that he was familar with the payments made to Willis for constructing the building; that checks had been issued to Willis for $118,504.15, which amount, "together with the sum of $9,000 paid directly by the First National Bank in Big Spring,

is a total of $127,504.15 applied on the lump sum contract of $129,300, leaving a balance due Willis of $1,795.85, less the cost of completing the building." He further swore that no payments were made to Willis after receipt of the first written notice or the filing of the first affidavit aforesaid and that the last check was issued to Willis on December 20, 1952. (It should be here noted that appellants' pleadings show they gave no notice to the owner and filed no affidavit for a lien prior to April, 1953.)

By way of cross action, Pittsburg Plate Glass Company alleged it entered into an agreement with Willis to furnish him, and Willis agreed to pay for, certain glass and other material used in the construction of the church; that it furnished said material and installed said glass in accord with its contract with Willis and completed its contract with Willis on February 19, 1953. It alleged that "more than ten days prior to May 14, 1953" it notified the trustees of its debt and presented them an itemized account and on May 14th, filed an affidavit for a lien, and that it was entitled to a lien under the provisions of Articles 5452, 5453 and 5461, Vernon's Ann.Civ.St.

In the alternative, it alleged the trustees were indebted to it for the material and labor furnished because the plans and specifications of the church's architect provided the contractor should execute a bond guaranteeing payment of all such bills and that not more than 85% of the contract price would be paid the contractor before completion of the building; that a copy of said plans and specifications was submitted to it, it relied thereon and furnished material and labor on the representations therein that a bond "had" been executed and that the trustees would retain 15% of the contract price; that no bond was required of Willis and the trustees failed to retain 15% of the contract price, and further that the trustees were required to retain 10% of the contract price for 30 days after completion of the building but they had failed to do so and "that the contract price agreed upon by the church and Baker Willis was $129,300.00."

The glass company then alleged that "the trustees were negligent in representing to it

(1) that a bond would be, or had been, required of Willis, by submitting to it the plans and specifications; (2) in failing to require a bond; (3) in failing to retain 15% and (4) in failing to retain 10% and that each of said acts was a proximate cause of its damage.

The glass company alleged that Willis did not act as an independent contractor but as agent of the trustees in the purchase of its material and labor and it was, therefore, entitled to judgment against the church. In the alternative, it asked for judgment against Willis. Attached to its cross action were invoices, the first of which was dated January 15, 1953.

The other defendants who filed affidavits attempting to fix liens against the building answered collectively and filed a cross action on their accounts and sought foreclosure of asserted liens; they alleged they sold material and performed labor in construction of the church in pursuance of a contract between themselves and the church and Willis. They prayed for judgment against the trustees and Willis, jointly and severally. In the alternative, they prayed that, if they did not have a contract with the church or its agent, they have judgment over against the church for the amount of their judgments against Willis "not to exceed 15% of the construction price agreed to be retained by the trustees." They alleged that the trustees either distributed the plans and specifications or caused them to be distributed and they relied thereon and furnished material and labor under the belief that 15% would be withheld. In the second alternative, said defendants alleged that, if it should be determined they were not entitled to be paid out of said 15%, under Article 5469, they were entitled to judgment against the trustees for 10% of the cost of said building. They prayed for judgment for their debts, attorneys fees, foreclosure and an order of sale. (Plaintiffs excepted to defendants' answers and cross actions but, according to recitals in the judgment, they were not passed on.)

The trustees alleged in an answer to defendants' cross actions that it was more

than 90 days after each of the defendants furnished the last material to Willis before they filed affidavits for a lien and that they failed to comply with the requirements for fixing a lien. The trustees pleaded the statutes of limitation; they alleged the material and labor were furnished to an independent contractor and that they had paid all sums due the contractor, except as heretofore shown, prior to the receipt of any notice or the filing of any affidavit and they denied that Willis acted as their agent in purchasing material and obtaining labor and alleged he was an independent contractor. Their answers were sworn to.

Thereafter, the trustees filed a motion for a summary judgment. They alleged that the pleadings, together with the attached affidavits, showed, except as to the funds tendered into court, that there was no genuine issue as to any material fact and they were entitled to judgment cancelling defendants' purported liens and removing the cloud on their title. Attached to said motion was the affidavit of the trustees that they executed a contract with Willis, as an independent contractor, to build the church building; that thereafter they entered into a "lump sum agreement"; that said supplemental contract provided for a total payment of $129,300 to Willis, and that this included all payments for material and work under the first contract. Copies of said contracts were attached to the motion.

The trustees swore that after making the first contract with Willis they borrowed from a bank $50,000; that they paid directly to Willis "$118,700.00" and authorized the bank to deposit to Willis' credit, out of said loan, $9,000, making a total payment to Willis under the terms of said contracts, of $127,504.15. They swore that when they made their last payment to Willis, on December 20, 1952, the trustees had not received written notice of any material or labor furnished Willis by defendants; that the first such notice was received in April, 1953; that there then remained on hand a balance of only $1,795.85 of the total amount agreed to be paid to Willis for the building; that after receipt of notice no payment was made to Willis and the church then owed Willis only $1,795.85, less the cost of completing the building, to wit: $750, and that there was due Willis under its contracts only $1,045.85. They swore that no lien affidavits were filed prior to April, 1953 (this fact was also disclosed by defendants' pleadings), and that the trustees turned over construction of said building to Willis; Willis selected his own employees without intervention of the church or its officers; that Willis bought the material at prices of his own choosing; that he carried open accounts with many of said defendants prior to beginning construction of the church and continued to buy on open accounts from them; that Willis hired and paid the laborers that were paid, handled the withholding tax and social security thereon, kept their time and supervised them without direction by the church or its officers; that Willis was not told when nor where to buy the material or obtain labor, or when labor was to be performed; that no architect was kept on the job and Willis was solely responsible for the management of all laborers, for all purchases and for the progress of the work. The motion was sworn to by the trustees and there was attached thereto the contracts between Willis and the church and also the affidavit of the church treasurer that the church had paid Willis on his contract $127,504.15, leaving a balance of $1,795.85, less $750 the cost of completing the building according to contract, and that no payment was made to Willis after receipt by the trustees of written notice of the claims of any of the defendants; that the last payment was made to Willis on December 20, 1952.

Article 1 of the first contract, which was not changed by the supplemental contract, provided what work was to be done and what documents constituted the contract. It provided that Willis should furnish all the labor and material and do all things necessary for the proper construction and completion of the church according to the plans and specifications and that the drawings, specifications and general conditions,

together with "this" agreement, should constitute the contract. It provided that the contractor, Willis, should use every effort to keep an adequate supply of labor and material; that, as a consideration for Willis' performance of the first contract, the church agreed to pay him $9,000. It provided that the church should reimburse Willis for all costs necessarily incurred and paid by the contractor in the proper prosecution of the work, and that such costs should include the following:

(a) *All labor*

(b) Salaries of contractors' employees

(c) Transportation

(d) Permit fees, royalties, damages for infringement of patents, and costs of defending suits

(e) Losses and expenses not compensated by insurance

(f) Minor expenses, such as expressage

(g) Cost of hand tools not owned by the workmen

(h) *All materials, supplies, equipment, transportation required for the proper execution of the work*

(i) The amounts of all separate contracts

(j) Premiums on all bonds and insurance policies

(k) Rentals of all construction plants or parts. (Emphasis ours.)

It provided that the following costs were not to be reimbursed:

(a) Salary of contractor

(b) Salary of any person employed by the contractor in his main office or in any of his regularly established branch office

(c) Overhead or general expenses

(d) Interest on capital.

Article 9, dealing with separate contracts, provided:

"All portions of the work that the Contractor's organization has not been accustomed to perform or that the Owner may direct, shall be executed under separate contracts let by the Contractor direct. In such cases either the Contractor shall ask for bids from contractors approved by the Owner and shall deliver such bids to him, or the Owner shall procure such bids himself, and in either case the Owner shall determine, with the advice of the Contractor, the award and amount of the accepted bid. The Contractor shall contract for such work direct with such approved bidders in accordance with the terms of this agreement and the General Conditions of the Contract, which Conditions shall, for the purposes of such contracts, stand as printed or written and not be subject to the modifications set forth herein.

"The Contractor, being fully responsible for the general management of the building operation, shall have full directing authority over the execution of the separate contracts.

"The separate contractors shall not only cooperate with each other, as provided in General Conditions of the Contract, but they shall conform to all directions of the Contractor in regard to the progress of the work."

The contract provided that the "contractor" should deliver to the "owner" a statement showing in detail money paid by the contractor on account of the cost of the work during the previous month for which he was to be reimbursed under Article 5, with the original payrolls for labor and all receipted bills, and that the owner would promptly pay Willis all it approved. It provided that if the contractor failed to pay a bill incurred by him, and for which he was to be reimbursed under Article 5, within 5 days after it became due, the owner, after giving the contractor 24 hours written notice, should have the "right" to pay such bill directly.

On October 6, 1952, this contract was amended by a written agreement which did not change the provisions above referred to but did change the original cost plus fee

contract to a fixed cost contract and provided for some changes in the plans and specifications, of which the following are typical:

(1) To extend the auditorium 21 feet

(2) To substitute asphalt shingles in lieu of marble.

After stating changes in the specifications, the second contract concluded with a provision that Willis was to be paid $129,-300 for the completed building.

The specifications make a large volume and it would be impractical to attempt to quote or even state most of them. However, there are some provisions in the general conditions, specifications and agreements which are directly pertinent to the question whether the contracts show that Willis was an independent contractor. Among these are provisions that the contractor shall furnish the owner with a bond guaranteeing faithful performance of his contract and protecting the owner against loss by reason of any lien; that the contractor should furnish the owner, before final payment, with a release of the lien of any subcontractor or materialman; that the contractor should pay for permits, surveys, inspection fees and damages resulting from accidents which might occur on account of the prosecution of the work before the owner took possession of the building; that Willis should bear all losses occasioned by neglect or accident during the progress of the work; that he should carry fire, lightning and tornado insurance payable to the contractor, or owner, as their interest might appear; that he should be responsible for any defects due to faults of labor or material discovered within one year after completion of the church and that the contractor should indemnify the owner against all claims for infringement by reason of the use of any patented design or device.

Under the title Carpentry and Millwork, it provided that the contractor should furnish all labor, material and other things necessary to complete his work as well as the work required of any subcontractor.

Under the agreement for painting, is was provided that the contractor should furnish all material, labor, tools, scaffolds and other appliances required to properly execute and complete such work according to plans and specifications. The final provision of the specifications with reference to construction of the church by the contractor, prior to the provisions relating to construction of the streets around the church by the contractor, is as follows:

"Finally: Any apparatus, appliance, material or labor that may be necessary to complete the work in accordance with the intent or purpose of these specifications shall be furnished by the Contractor without extra cost, as if mentioned in these specifications or shown on the plans."

Defendants' accounts indicate that their material and labor were furnished by virtue of a contract between them and Willis and show that their first written notice to the owner and first affidavit filed was at times subsequent to the payment to the contractor of the contract price, except as heretofore stated. The affidavits relative to such payments show that the last payment to Willis by the trustees was made in December, 1952 (while appellants' affidavits were first filed and notices were first given in April, 1953). Affidavits as to these facts were not controverted. None of the defendants filed an answer to the motion for summary judgment and they filed no denial of said affidavits. Their depositions show that they gave no written notices of their debts and filed no affidavits for liens until after the trustees had made the stated payments to Willis. Defendants alleged knowledge of the terms of the contract between Willis and the church.

The court sustained the trustees' motion for summary judgment and rendered judgment cancelling defendants' purported liens on the church building and lots and removing the cloud on plaintiffs' title. Pittsburg Plate Glass Company, Henderson, Jeter, Harwell and the partners in the Saunders Company appealed.

■ We think the court properly concluded that the unambiguous contracts between Willis and the church made Willis an independent contractor. Willis purchased the material and obtained the labor and those who were paid were paid by Willis and the bills therefor were presented to Willis, not to the trustees. Under the contracts, Willis was required to furnish the material and labor and pay therefor and to construct the building according to the plans and specifications. Under the first agreement Willis was to be paid the cost of a building constructed according to said plans and specifications plus a fee of $9,000, under the supplemental contract Willis agreed to furnish the material and labor necessary to erect the church building according to plans and specifications and pay therefor, and to erect said building according to plans and specifications, for which he was to be paid $129,300. The owner did not have the right to determine the means or methods by which the result contracted for would be accomplished. The manner in which Willis was to be compensated was indicative of an owner-independent contractor relationship. The right of supervision retained by the owner did not deprive the contractor of the right to use his own judgment in performance of the work and it gave to the owner only such right of supervision as permitted him to see that the result contracted for was accomplished. The agreements did not leave with the owner the right to control the manner of their accomplishment. The contracts clearly provided that Willis was to furnish all the material and labor and pay therefor and construct the building according to contract, for which he was to be paid as previously stated. See 23 Tex.Jur. 545; Alexander Film Co. v. Williams, Tex.Civ.App., 102 S.W.2d 514, 516; 27 Am.Jur. 485.

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work * * *." 56 C.J.S., Master and Servant, § 3(1), page 41. See also 39 C.J. 1321; Julius Keller Const. Co. v. Herkless, 59 Ind.App. 472, 109 N.E. 797, 801; 57 C.J.S., Mechanics' Liens, § 110, page 615.

■ When a contract is unambiguous, as in this case, the person liable for labor and material is to be determined from the terms of the contract. 17 C.J.S., Contracts, § 370, page 838.

"In the absence of an express contract making the owner liable, the compensation of persons who perform labor for, or furnish materials to, the builder is generally to be paid by such builder, and not by the owner, although the work is done under the direction of, and in accordance with plans furnished by, the owner's engineer; and subcontractors and materialmen must resort for payment to the builder or contractor, as in the absence of an express contract there is no privity between a subcontractor employed by a general building contractor and the owner, and the liability of the owner is only to the general contractor who is liable to the subcontractor. *This rule is particularly applicable where the builder has contracted with the owner to pay the claims of laborers and materialmen, or where there is nothing due from the owner to the builder.*" 17 C.J.S., Contracts, § 370, page 839. (Emphasis ours.)

See also Lone Star Gas Co. v. Kelly, Tex. Com.App., 46 S.W.2d 656; Dave Lehr, Inc., v. Brown, 127 Tex. 236, 91 S.W.2d 693, 694; Burton-Lingo Co. v. Armstrong, Tex.Civ.App., 116 S.W.2d 791, 795, Writ Ref.; Carter Publications, Inc. v. Davis, Tex.Civ.App., 68 S.W.2d 640, 642, Writ Ref.; Herndon v. Hailliburton Oil Well Cementing Co., Tex.Civ.App., 154 S.W.2d 163, Writ Ref.

In Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522, 524, the Commission said the definition of an independent contractor deemed most accurate was the following:

"'A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.'"

■ Appellants apparently contend that the contracts do not make Willis an independent contractor because the first was a cost plus contract. It has been decided that a cost plus provision does not prevent a contract from creating an owner and independent contractor relationship. Carruth v. Valley Ready-Mix Concrete Co., Tex. Civ.App., 221 S.W.2d 584, Writ Ref.; Campbell v. Wm. Cameron & Co., Tex. Civ.App., 38 S.W.2d 865, 867, Writ Dis.

In Associated Indemnity Corporation v. Walnut Hill Corporation, Tex.Civ.App., 220 S.W.2d 301, 304, the court answered appellants' contention as follows:

"We have carefully read the authorities relied upon and do not construe them to declare the rule to be that every contract for construction which fixes the compensation of a contractor as a stipulated per centum of the actual costs constitutes the contractor the agent of the owner. What the cases, in a word, hold, is that one is liable for all he agrees to pay for, whether purchased by himself or through an agent. Our conclusions and views find support in the case of Allen v. Republic Building Co., Tex. Civ.App., 84 S.W.2d 506, wherein we think the correct rule is announced that the payment of a per cent of the costs of construction as compensation to the contractor is not inconsistent with the relation of independent contractor and owner and such provision for payment is not decisive but the relationship must be determined from all the terms of the contract."

In Allen v. Republic Bldg. Co., Tex.Civ. App., 84 S.W.2d 506, the court held that a contractor employed to construct a building under an agreement which gave him control and supervision of the construction according to plans and specifications, although he was to be compensated on a cost plus basis, was an independent contractor. The decision in J. B. McCrary Engineering Co. v. White Coal Power Co., 4 Cir., 35 F.2d 142, 146, is to the same effect.

Appellants cite authorities which hold that under certain contracts to furnish material and labor for the erection of a building on a cost plus basis the contractor in purchasing the material and obtaining labor acted as agent for the owner, who became liable to the laborers and materialmen. Authoritative decisions to such effect may be distinguished by the facts. To illustrate, in Gilbert Mfg. Co. v. Connellee, Tex.Com.App., 265 S.W. 375, one of the decisions chiefly relied on, the contract expressly provided that the *owner* should "'pay for all work, materials, freight, drayage, offices, sheds, small tools and usual charges incurred in the costs of buildings of this character'" and that payment should be made directly *by the owner* to the materialmen and laborers. (Emphasis ours.) The provisions of the contracts under consideration in this case are directly to the contrary. These contracts specifically provide that the contractor, not the owner, shall buy the material and obtain the labor necessary for constructing the building according to the plans and specifications and that the contractor, not the owner, shall pay the materialmen and laborers.

It has been held that persons not contracting with the owner but with the contractor are charged with notice of, and bound by, the terms of the contract between the owner and contractor. 57 C.J.S., Mechanics' Liens, § 108, page 613. Defendants alleged Willis gave them copies of the contract between the church and Willis and they relied on its terms. The defendants who were witnesses, except Mr. Saunders, testified to that effect.

■ Appellants contend the trustees were not entitled to treat the $9,000 paid

to Willis by a bank as being paid by the trustees on the building contract. The trustees borrowed $50,000 from a bank. Willis, with the consent of the trustees, assigned his claim against the trustees for $9,000 to that bank and collected that amount, out of said loan to the trustees, before any of the appellants gave written notice of their claims or filed affidavits. Prior to such notices and affidavits the trustees had the right to thus make payment on the contract price without regard to the claims of appellants. Gordon Jones Const. Co. v. Welder, Tex.Civ.App., 201 S.W. 681, 685, Writ Ref.; Scarborough v. Victoria Bank & Trust Co., Tex.Civ.App., 250 S.W.2d 918, Writ Ref.; 29 Tex.Jur. 596; Nicholas v. Miller, 182 Va. 831, 30 S.E.2d 696, 153 A.L.R. 759.

Appellants' suit against the contractor, Willis, was severed from the remainder of the case. We think the court clearly had the right to do so and that appellants have not been injured thereby. Gay v. Acme Brick Co., Tex.Civ.App., 15 S.W.2d 725, Writ Ref.

The specifications provided that 15% should be retained until acceptance by the owner of the material and work. Appellants, with the exception of the Saunders Company partnership, contend that copies thereof were delivered to them by Willis; that they relied thereon and that, therefore, the owner became liable to them for said 15%. Mr. Saunders, who acted for the Saunders Company partnership, frankly admitted he did not deal with any person having authority to act for the church and did not read said provisions. Said partnership, therefore, cannot make the contention made by the other appellants. However, we are of the opinion the other appellants are in no better position because our Supreme Court has definitely held that such a provision is for the benefit of the owner and not for the benefit of the materialmen and laborers. Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, 1007; 57 C.J.S., Mechanics' Liens, § 255, page 836. See also 40 C.J. 365; 12 Am.

Jur. 842; Scarborough v. Victoria Bank & Trust Co., Tex.Civ.App., 250 S.W.2d 918, 923, Writ Ref.

Appellants complain because the trustees did not retain 10%, as provided by Article 5469. The record does not show that the trustees failed to retain the amount of appellants' unpaid labor bills or that they did not recover for their labor. Despite the fact that the record otherwise shows that before notice was given the trustees paid to Willis on the contract all but $1,795.85 of the total amount agreed to be paid for the building and that $750 more was required to complete the building and that the trustees paid into court for defendants only $1,045.85, the judgment shows that, in fact, they paid into court $2,924.85, which amount was ordered disbursed to appellants and three other defendants ratably. To obtain a reversal of a judgment an appellant is required to show that the court erred and he was injured thereby.

The specifications provided that the contractor should execute a bond for the faithful performance of the contract and for the use and benefit of all parties "who may become entitled to liens under said contract, according to the provisions of the laws of the State of Texas." Pittsburg Plate Glass Company contends the court erred in rendering judgment against it because the contractor did not execute such a bond and, therefore, the owner was liable to it. We, of course, recognize the right of third parties to sue on contracts made for their benefit but, to show itself the beneficiary of such a provision, the glass company had to prove it had a lien. The glass company alleged that on December 10, 1952, it made a contract with Willis to furnish material for the construction of the church and Willis agreed to pay $1,302 therefor; that said contract was completed February 19, 1953; that more than 10 days prior to May 14, 1953, it notified the trustees in writing of its desire to collect its debt and presented them with an itemized account and on May 14, 1953, it filed its affidavit for a lien with the county clerk.

Neither it nor the other defendants' affidavits were filed, nor was written notice given to the trustees, until after the trustees had paid out to the contractor on his contract, $127,504.15 of the $129,300 total consideration the owner agreed to pay for the church and there then remained in the owner's hands only $1,795.85, $750 of which was required to complete the building after abandonment by the contractor, and the balance, $1,045.85, was paid into the registry of the court for the laborers and materialmen. Despite this showing, the trustees actually paid into court $2,924.85, which was ordered paid as heretofore shown.

■ The glass company was not entitled to a lien against the building and it was not, therefore, a beneficiary of said provision and was not injured by such failure. There was an affidavit attached to the trustees' motion that their last payment to Willis was made in December, 1952. None of appellants filed an answer thereto but, treating their answers to the trustees' petition as answers to such motion, their pleadings, affidavits and depositions show that the first of the written notices to the church was given and the first of the affidavits for liens was filed in April, 1953. There is no denial of the trustees affidavit that when appellants gave written notice, or filed affidavits, the owner had already paid all the money due, or to become due, the contractor under the building contract, except as heretofore shown. In this connection, see Texas Fidelity & Bonding Co. v. Elliott, Tex. Civ.App., 195 S.W. 301, 306, Writ Ref.; Gay v. Acme Brick Co., Tex.Civ.App., 15 S.W.2d 725, 728, Writ Ref. It is evident that the glass company could not have a lien except on the money then in possession of the owner. This has been paid into court and the glass company's rights therein recognized. Its notice and affidavit could not have had any greater effect than to impound that part of the contract price then unpaid. The glass company, therefore, had no lien on the church and was not entitled to recover from the trustees by reason of the failure of the contractor to execute a bond. This is true, regardless of whether otherwise the owner would have been liable for the contractor's failure to execute a bond. That question is not decided. Our statutes provide that neither the owner nor his property shall be liable for any money paid the contractor before the materialmen file their affidavit or give written notice of their claim. The amount fixed by the contract as the cost of the building was the limit of the church's liability. Our statutes provide:

"* * * the owner shall in no case be required to pay, nor his property be liable for, any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt." Art. 5463.

"Nothing in this law shall in any manner affect the contract between the owner and original contractor as to the amount * * * of said contract price." Art. 5468.

See Dudley v. Jones, 77 Tex. 69, 14 S.W. 335, 336; Fullenwider v. Longmoor, 73 Tex. 480, 11 S.W. 500, 501; Berry v. McAdams, 93 Tex. 431, 55 S.W. 1112; Ricker v. Schadt, 5 Tex.Civ.App. 460, 23 S.W. 907, 908; Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061, 1069; 29 Tex.Jur. 548; McConnell v. Frost, Tex.Civ.App., 45 S.W.2d 777, 780, Writ Ref.; Eldridge v. Poirier, Tex.Civ. App., 50 S.W.2d 888, 891, Writ Ref.

■ There being no denial of the affidavit that the owner was not notified of appellants' claims and that their affidavits were not filed until after the owner had paid to the contractor all it had contracted to pay for the building, except that paid into court, appellants were not entitled to judgment against the trustees except for their share of the funds paid into the court.

The judgment is affirmed.